John ANDERSON, Plaintiff,

v.

W. L. RICHARDSON, District Representative, Internal Revenue Service, Miami, Florida, et al., Defendants.

Civ. No. 73-175.

United States District Court,
S. D. Florida,
Miami Division.

Feb. 2, 1973.

George D. Gold, Miami, Fla., for plaintiff.

Robert Reynolds, Asst. U. S. Atty., Miami, Fla., Wesley J. Lynes, Internal Revenue Service, Washington, D. C., for defendants.

## ORDER DENYING STAY

JAMES LAWRENCE KING, District Judge.

This matter comes on for consideration by the court upon the government's motion for a stay of the mandatory injunction entered February 1, 1973, after an emergency evidentiary hearing before the court. In full awareness of the rarity with which the judiciary has found it necessary to enjoin the internal revenue service in the rather difficult discharge of their responsibility to collect taxes lawfully due the United States of America, and the possible far-reaching effects of an opinion and order of this type, the court is nevertheless impelled by the odious facts of this particular case to reach the following factual findings and conclusions of law.

The uncontradicted testimony developed at the evidentiary hearing held February 1, 1973, after notice to all parties, reflects that the plaintiff John Anderson, was arrested by two men in "hippie garb" on Friday, January 26, 1973, while parked in a church parking lot. The arresting officers wore no uniforms, carried no identification and were traveling in an unmarked compact car. Upon inquiry, the arresting officers advised the plaintiff that he had committed a traffic violation and they were going to take him down town and book him for that offense. The plaintiff was spread-eagled over the hood of the car, handcuffed, searched and $7,900 in cash was confiscated from his pocket. Without being advised of any constitutional right to remain silent, the plaintiff and his passenger were placed in the unmarked green compact car, and held there while the two city Public Safety Division officers searched his car on three or four occasions from stem to stern.

Upon Anderson's eventual arrival an hour and one-half later in the Public Safety Building, he was subjected to

further questioning by the officers without *Miranda* warnings, again explaining that he recently sold a small business for $30,000 and that he had several bank accounts in the Second National Bank of Miami. While the officers who had arrested Anderson looked for a ticket book with which to issue the traffic citation, he was questioned by other agents, including two from the Internal Revenue Service, still without *Miranda* warnings. After some two and one-half hours of questioning during which he answered all questions relating to his business, bank accounts and real estate he was released.

The following Monday evening, January 29, Anderson accompanied his wife, his attorney and his accountant to the IRS and proffered for their inspection and copying his copies of his 1970 and 1971 income tax returns, as well as the work papers of a tentative 1972 return which had not been filed and will not be due until April, 1973. While there, the agents assured him that the returns appeared to be in good order, and that no deficiency judgments, jeopardy assessments or liens were outstanding against him. Nonetheless, they made copies so that they might continue to look them over.

The next day Anderson's wife, who had gone to the bank to make a deposit, learned that their assets in their joint savings and checking accounts and in their safety deposit box had been attached by the IRS on the preceding Friday. Checking revealed that a lien had been placed on their home and that a certificate of deposit held as security for certain loans had been sold by the bank upon learning of the IRS action. On Wednesday, January 30, Anderson brought this action for emergency injunctive relief and a hearing was set for January 31, at 2:30 p. m.

At the hearing, attended pursuant to notice by representatives of the IRS and the U.S. Attorney, Anderson testified to the foregoing events and to the fact that he is the sole means of support for a family of five, that all his assets were frozen, and that he had nothing with which to feed or provide for his family. In response to his request for the return of his property, the government stated that it was unprepared to present information about Anderson or the reasons for the liens because it had not learned of the emergency hearing until the lunch hour. Nonetheless, the IRS representative stated that the liens and attachments had been made pursuant to a jeopardy assessment mailed to Anderson on Wednesday, January 31, 1973, based on his unfiled, preliminary 1972 return. Upon query from the court, the IRS spokesman admitted that he saw no way the IRS could succeed on this jeopardy assessment.

■ It has long been the law that a federal court generally lacks power to grant injunctive relief against the collection of taxes. 26 U.S.C. § 7421(a) provides, in pertinent part:

" . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

Nonetheless, this provision has been construed by a unanimous Supreme Court to permit injunctions against attempted tax collections both where "it is clear that under no circumstances could the Government ultimately prevail" and where "equity jurisdiction otherwise exists." Enochs v. Williams Packing Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L. Ed.2d 292 (1962). The Fifth Circuit has recently applied this standard in Lucia v. United States, 447 F.2d 912 (5th Cir. 1971).

■ Although a tax assessment is presumptively valid and the burden is on the taxpayer to prove its invalidity, Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935), the presumption does not constitute evidence and disappears where the taxpayer introduces evidence to overcome it. New York Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726 (1938).

Petitioner argued that his uncontradicted testimony that he had been subjected to an unlawful search and seizure, without *Miranda* warnings, and that the assessment ultimately filed against him had been the poisonous fruit of that unlawful search and seizure overcame the presumption and met the first requirement of the *Enochs* test. We agree. If the government had had any contradictory evidence to introduce, it should have been prepared to do so upon short notice, since it had been acting against petitioner for seven days prior to the hearing. The only evidence offered clearly established an unlawful search and seizure, the fruits of which cannot be used to support a jeopardy assessment. Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969); Hand v. United States, 441 F.2d 529 (5th Cir. 1971). But these matters are academic in light of the government's express admission that the jeopardy assessment upon which it relied for the liens and attachments could not ultimately succeed.

There can be no doubt that petitioner lacks an adequate remedy at law. Moreover, Anderson's testimony that he lacks the ability to feed his family and otherwise provide for them as a result of the seizures adequately establishes irreparable injury. There can be no serious argument that the injury to this plaintiff under the peculiar facts of this case overbalances any consideration of potential injury to the public from the inability to collect a deficiency which may subsequently come to light free of the taint of the government's actions herein. Thus, the second requirement of the *Enochs* test is met, and the court so holds.

The above findings and conclusions have been reached only after careful consideration of the uncontradicted testimony adduced at an adversary hearing; the credibility of the witness and the evidence, the demeanor of the witness while testifying under oath and subject to cross-examination, and the IRS replies to the court's questions concerning any evidence at all favorable to the government. It is therefore,

Ordered, adjudged and decreed that the motion for stay be and the same is hereby denied and the defendants be and they are hereby directed to forthwith obey the oral order of the court, (subsequently reduced to writing in this cause and dated February 1, 1973) to return to plaintiff his property.

The official court reporter is hereby directed to prepare a transcript of the hearing held February 1, 1973 for consideration by the Court of Appeals in the review of this case.