SAM COHEN AND ETHEL COHEN; SAMUEL (a/k/a SAM) COHEN AND ETHEL COHEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Cohen v. Commissioner
Docket Nos. 4290-69, 3614-70, 3927-71, 6145-72, 7823-74, 6244-75
United States Tax Court
T.C. Memo 1981-345; 1981 Tax Ct. Memo LEXIS 399; 42 T.C.M. (CCH) 312; T.C.M. (RIA) 81345; July 2, 1981
WILBUR
MEMORANDUM SUR ORDER WILBUR, Judge: By separate notices of deficiency, respondent determined the following amounts due from petitioners for Federal *401 income taxes and imposed the following penalties: Taxable
[1] Sec. 6653(b) Year
Deficiency
Penalty
1963
$ 647,772.94
$ 323,886.47
1964
822,325.41
411,162.71
1965
5,740,535.63
2,870,267.82
1966
11,009,821.42
5,504,910.71
1967
17,876,207.39
8,938,103.70
1968
27,847.49
1971
315,786.28
On October 19, 1977, respondent filed an amended answer in which he altered his computations of income taxes due from petitioners as follows: Taxable
Sec. 6653(b)
Year
Deficiency
Penalty
1963
$ 647,772.94
$ 323,886.47
1964
822,325.41
411,162.71
1965
2,278,404.85
1,139,202.43
1966
3,372,061.64
1,686,030.82
1967
1,137,963.97
568,981.99
1968
13,285.36
1971
82,037.73
The petitioners filed the following motions in advance of trial: (1) Motion to Suppress and Motion to Shift Burden of Going Forward, (2) Motion to Strike, (3) Motion to Shift Burden of Proof, (4) Motion to Dismiss, and (5) Motion for Partial Summary Judgment. A hearing was held on *402 these motions in Las Vegas, Nevada, and subsequently briefs and reply briefs were filed by the parties. The issues raised by the motions are: (1) whether in formulating a substantial part of the deficiencies proposed against petitioners, respondent's agents disclosed and utilized grand jury material in violation of Rule 6(e) of the Federal Rules of Criminal Procedure; and (2) assuming Rule 6(e) of the Federal Rules of Criminal Procedure was violated, the appropriate remedy to apply. Sometime prior to 1966, Revenue Agent Richard Ehrensing of the Internal Revenue Service ("the IRS") started a civil audit of the Flamingo Company ("the Flamingo") for the fiscal years 1961 and 1962. In 1966, the civil examination was expanded to include the fiscal years 1963, 1964, and 1965. In September of 1966 Revenue Agent Ehrensing was told that IRS surveillance disclosed the possibility of suppressed income at one crap table at the Flamingo, one day, one shift, of approximately $ 4,881. Ehrensing then referred his civil audit to the Intelligence Division, the branch of the IRS responsible for criminal investigations, and it was decided that the Flamingo should be the subject of a full scale *403 organized crime investigation for the fiscal years 1963 through 1968. The fiscal years 1961 and 1962 were closed civilly after the Flamingo agreed to the IRS adjustments. Subsequently, the IRS decided to proceed with the joint civil and criminal investigation only for the years 1966, 1967, and 1968. A statutory notice of deficiency for the years 1963, 1964, and 1965 was sent to the Flamingo Company, but because of the limited nature of the surveillance, no issue relating to the "skimming" of unreported casino income was included in the deficiency notice. The special agents from the Intelligence Division of the IRS assigned to the joint investigation for the years 1966 through 1968 were Andrew Baruffi and Glenn Tellgren. The revenue agent from the Audit Division of the IRS assigned to the joint investigation was Richard Ehrensing. On February 12, 1970, the Chief Counsel of the Internal Revenue Service sent a letter to the Assistant Attorney General, Criminal Division, Department of Justice, suggesting that a grand jury be convened to investigate the Flamingo Company and its shareholders. Memorandum reports prepared by IRS Special Agents Andrew Baruffi and Glenn Tellgren outlining *404 what was proposed to be accomplished through use of a grand jury were attached to the letter. The letter also suggested that the U.S. Attorney's office file a motion with the court for an order under Rule 6(e) of the Federal Rules of Criminal Procedure ("6(e) order") that would make available to the Internal Revenue Service any information gathered by the grand jury. The letter stated that it was clear that unless a 6(e) order was granted, the IRS could not use in connection with any civil tax determination any of the knowledge gained by its particular employees who assist the U.S. attorneys in evaluating grand jury evidence for indictment purposes. A grand jury was convened in Miami, Florida in 1970 to investigate the Flamingo Company and its shareholders. On February 12, 1971 Special Agent Baruffi issued his IRS special agent's report. The report makes clear that the attorneys from the Justice Department who acted as prosecutors before the grand jury ("attorneys for the government") discussed grand jury testimony with the special agents of the IRS. At the conclusion of the special agent's report, it was suggested that a 6(e) order be obtained so as to permit the Internal Revenue *405 Service to use the evidence obtained by the grand jury for determining the civil tax liability of the Flamingo Company and its shareholders. On March 18, 1971, the attorneys for the government issued their prosecution memorandum to the Chief of the Organized Crime and Racketeering Section of the Department of Justice. The prosecution memorandum contained a substantial number of references to testimony before the Miami grand jury, and was furnished to the Intelligence Division of the IRS. By letter dated March 19, 1971, the Chief Counsel of the Internal Revenue Service through Joseph W. Salus, Technical Assistant, Enforcement Division, advised the Assistant Attorney General, Tax Division, Departent of Justice, of recommendations regarding the potential for criminal prosecution of the Flamingto Company and its shareholders. In the letter Mr. Salus requested that a 6(e) or der be obtained so that the IRS could have the benefit of the grand jury transcripts. On March 25, 1971, the Miami grand jury returned an indictment against petitioner Samuel Cohen, the Flamingto Company, and four other individuals charging one count of conspiracy. This indictment was later dismissed. A grand *406 jury was again convened in October of 1971 in Las Vegas, Nevada, which returned a five count indictment against petitioner Samuel Cohen and six other individuals. By a memorandum dated November 30, 1971, Revenue Agent Ehrensing requested approval from his superiors in the IRS to reopen the civil case concerning the Flamingto Company and its shareholders for the taxable years 1961 through 1965. In the memorandum Revenue Agent Ehrensing referred extensively to testimony presented to the grand jury, and he relied on this information in computing the proposed civil tax adjustments. The report stated that steps had been taken to secure the grand jury testimony for civil proceedings. However in fact, no application had been made for a 6(e) order. At no time were any IRS agents sworn in or appointed as agents of either the Miami grand jury or the Las Vegas grand jury. However, Special Agents Baruffi and Tellgren actively assisted the attorneys for the government by preparing questions and evaluating grand jury testimony and documents. Thus, information obtained by the grand jury was freely given to these special agents, who in turn, conveyed grand jury information to Revenue Agent *407 Ehrensing. Special Agent Baruffi continually provided oral summaries to Revenue Agent Ehrensing of the testimony of witnesses before the grand jury. Revenue Agent Ehrensing then utilized the grand jury information to recompute the civil tax liability of petitioners and others connected with the Flamingo. He also helped the special agents with some of the computations of the casino. In January of 1973, petitioner Samuel Cohen entered a plea of guilty to counts one and two, both conspiracy charges, of the indictment returned by the Las Vegas grand jury. Counts three, four, and five were dismissed. On April 30, 1973, Special Agent Baruffi and Revenue Agent Ehrensing met with two lawyers from the Department of Justice to discuss the possibility of asking the District Court for a 6(e) order disclosing grand jury information to the Internal Revenue Service for use in the civil investigation. At the meeting, attorney Marvin Loewy from the Criminal Division of the Department of Justice stated that he would not solicit a 6(e) disclosure order for the grand jury material, and recommended that Ehrensing obtain the information by interviewing the individuals involved in lieu of using *408 the official grand jury transcripts. Attorney James Walker from the Tax Division of the Department of Justice indicated that his superiors believed that a 6(e) order should be obtained. Attorney Walker also stated that it was the opinion of Joseph Salus in the Chief Counsel's office of the IRS that a 6(e) order must be obtained for the IRS to secure the evidence. Attorney Loewy stated that as far as he was concerned the 6(e) order was unnecessary and that since IRS agents had read the testimony legally, he did not want to set such a precedent. A 6(e) order was not applied for at that time. Subsequent to the April 30th meeting, IRS Special Agent Baruffi, who had custody of the grand jury transcripts in the office of the Intelligence Division of the IRS, turned over all of the official grand jury transcripts to Revenue Agent Ehrensing to read and use in the civil investigation of the Flamingto and its shareholders. In June of 1973, the Miami branch office of the Regional Counsel of the Internal Revenue Service requested the closed enforcement file in the Flamingto Company case from the Department of Justice for use in preparing petitioners' case for civil trial. In response *409 to the request, the enforcement file containing several documents summarizing grand jury testimony was forwarded to the Miami office of Regional Counsel and made available to the Internal Revenue Service personnel. In July of 1973, on the basis of information obtained by the grand jury, Revenue Agent Ehrensing and Special Agent Baruffi interviewed George Horvath and reconstructed the testimony he had previously given to the grand jury. Mr. Horvath's statements to the IRS agents were forth in an affidavit, which he signed. Revenue Agent Ehrensing concluded his civil investigation of the Flamingo Company and its shareholders and submitted a final report to his superiors on January 18, 1974. In preparing the final report, as well as several intermediate reports, Revenue Agent Ehrensing made extensive use of the testimony and information presented to the Las Vegas and Miami grand juries to compute the adjusted tax liability of the Flamingo and its shareholders. At the time Revenue Agent Ehrensing issued his final report, he knew that a 6(e) order covering the civil use of grand jury evidence had not been issued. On the basis of Revenue Agent's Ehrensing's report, a statutory notice *410 was issued on June 21, 1974 (Docket No. 7823-74) in which Samuel and Ethel Cohen were determined to have received unreported "skimmed" income from the Flamingo Company in the amount of $ 750,628.64 and $ 1,083,135.61 for the years of 1963 and 1964, respectively. On December 2, 1974 the affidavit of George Horvath taken in July of 1973 by Special Agent Baruffi and Revenue Agent Ehrensing and the affidavit of Jerry Gordon which was read to the Las Vegas grand jury were forwarded to IRS Appellate Conferee William Karo in Miami. On the basis of this information, an attorney from the IRS contacted George Horvath by telephone on June 10, 1975 to discuss Mr. Horvath's knowledge of "skimmed income" from Flamingto casinos. On the basis of summaries of grand jury testimony contained in the Flamingto enforcement file, an IRS attorney contacted and interviewed Lou Poller on June 24, 1975 regarding his testimony before the grand jury. Prior to September 9, 1975, no request was made nor was any order issued by a Federal district court authorizing disclosure of any information gathered by the Miami and Las Vegas grand juries in their investigations to the Internal Revenue Service for use in *411 a civil case. On September 9, 1975, upon an exparte motion filed by the United States Attorney under Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)"), the District Court in Nevada ordered that the grand jury testimony of Sam Belkin and Arthur Newman, two former employees of the Flamingto, and the affidavit of Jerry Gordon be made available to the Internal Revenue Service for use in determining whether there were any unassessed Federal tax liabilities on the part of petitioner Samuel Cohen, the Flamingo, and others. At the time the District Court authorized disclosure under Rule 6(e), it was not advised of the prior involvement of Internal Revenue Service agents with the grand jury or of any prior access to grand jury information. On the basis of information and adjustments contained in Revenue Agent Ehrensing's final report, respondent filed amended answers on October 19, 1977 in Docket Nos. 4290-69, 3614-70 and 3927-71, in which he raised for the first time the issue of unreported "skimmed" income received from the Flamingo for the years 1965, 1966, and 1967. In the amended answers, respondent conceded that petitioners did not receive any taxable income *412 for the years 1965, 1966 and 1967 from unexplained bank accounts, as proposed in the original notices of deficiency, which had been sent in 1969, 1970, and 1971. In the summer of 1978, attorneys from the Miami, Reno, and Phoenix offices of the Chief Counsel of the IRS met in Las Vegas to review the pending cases of the Flamingo shareholders. They decided that the 6(e) order issued in 1975 was insufficient in that it did not cover all of the grand jury material in the possession of the IRS and that a request would be made to the U.S. Attorney's office to obtain a more expansive order. On October 19, 1978 upon an ex parte motion filed by the U.S. Attorney under Rule 6(e), the District Court in Nevada released all of the grand jury transcripts and documents to two named IRS employees for use in the civil cases pending before the Tax Court. It was represented in the brief submitted on behalf of the government that the Internal Revenue Service became involved in investigating petitioners' civil tax liability after petitioner Samuel Cohen's conviction (which was in 1973) although in fact the civil investigation began prior to 1966. Again the District Court was not advised that *413 IRS agents had been involved with the grand jury or that IRS agents had read and utilized grand jury material in the civil cases prior to receiving a disclosure order under Rule 6(e). On January 24, 1980, IRS Assistant District Counsel Arnold Kaufman wrote a letter to the United States Attorney attention Rimantas Rukstele, Assistant U.S. Attorney, requesting that an application be made to the District Court in Nevada for a new "curative" 6(e) order. In the letter, Mr. Kaufman detailed the prior involvement of IRS agents with the grand juries and the use of grand jury material in the civil case. Attached to the letter were copies of motions filed by petitioners' attorney in the Tax Court based on alleged unauthorized disclosures of grand jury evidence in violation of Rule 6(e). The letter stated that the purpose of obtaining a new 6(e) order was to defeat petitioners' motions in the Tax Court. The letter also made reference to the request of petitioners' attorney for copies of the grand jury transcripts in respondent's possession. Upon receiving the letter, Assistant U.S. Attorney Rukstele submitted an affidavit to the District Court in Nevada, explaining what he considered *414 to be the misleading statements in the government's brief in support of the 1978 6(e) order. Attached to the affidavit was the letter from Assistant District Counsel Kaufman disclosing prior Internal Revenue Service involvement. Upon receiving the affidavit, the District Court in Nevada entered a 6(e) order disclosing all grand jury information to petitioner Samuel Cohen and any other defendants named in the grand jury indictment who as taxpayers, become litigants before the United States Tax Court in proceedings to determine their civil tax liability. The District Court did not enter a new "curative" 6(e) order retroactively allowing the disclosure to the Internal Revenue Service. The parties have presented a clear and consistent pattern, extending over many years, of utilization of grand jury testimony and material for civil tax purposes prior to obtaining a court order authorizing disclosure under Rule 6(e) of the Federal Rules of Criminal Procedure. To recapitulate in summary form, the essential facts are as follows: Upon the recommendation of special agents of the Internal Revenue Service investigating the Flamingo and its shareholders, two grand juries were convened in *415 1970 and 1971. While the grand juries were in session, the IRS special agents actively assisted the attorneys from the government in presenting evidence to the grand jury. At the same time, the IRS special agents freely conveyed grand jury information to Revenue Agent Ehrensing, who utilized the testimony presented to the grand jury to reconstruct the civil tax liability of petitioners and others connected with the Flamingto. On the basis of Ehrensing's computations, a statutory notice was issued to petitioners for the taxable years 1963 and 1964, and an amended answer was filed for the taxable years 1965, 1966, and 1967 in which the government raised a new issue of "skimmed income" to petitioners as shareholders of the Flamingto. It was not until September of 1975 that the government first applied to the District Court in Nevada for a disclosure order allowing access to the grand jury testimony of three witnesses for use in the civil tax case. The court was not informed of the prior involvement of the IRS with the case or of the fact that the IRS already had possession of and had utilized virtually all of the grand jury material for civil purposes. In 1978, the government *416 went back to the District Court for a new 6(e) order covering all of the grand jury material. Again the District Court was not informed of prior access and utilization, and it was represented to the court that the civil tax investigation began subsequent to the grand jury indictments, when in fact it had begun many years before. In 1980, after petitioners filed a motion to suppress the evidence, the IRS requested a new "curative" 6(e) order and disclosed the prior unrevealed involvement with the case. The District Court entered a disclosure order making the grand jury material available to petitioner Samuel Cohen but did not issue a "curative" order authorizing disclosure to the Internal Revenue Service or retroactively sanctioning prior utilization of the material by the IRS. The issues for decision are whether the Internal Revenue Service utilized grand jury material for civil purposes in violation of Rule 6ne) of the Federal Rules of Criminal Procedure, and if so, the remedy to be applied. Petitioners argue that IRS employees utilized grand jury evidence for civil purposes without obtaining a valid 6(e) order, and that suppression of the evidence or dismissal of the case *417 is the appropriate remedy. Respondent contends that IRS agents did not violate Rule 6(e) in utilizing grand jury material prior to obtaining a 6(e) order, and that even assuming a violation did occur, the District Court in Nevada has already applied the appropriate remedy by making the grand jury material available to petitioners. In disseminating grand jury material to employees of the Internal Revenue Service for use in a civil tax case and in utilizing the information to determine a potential civil tax liability on the part of petitioners prior to obtaining a court order authorizing disclosure under Rule 6(e), agents of the Internal Revenue Service violated Rule 6(e) of the Federal Rules of Criminal Procedure. In addition, because of the extreme and substantial nature of the violations, and because the District Court did not enter a "curative" 6(e) order after it was apprised of the violations, respondent may not utilize the grand jury material in the civil tax case of petitioners in the Tax Court, and respondent bears the burden of going forward in this case with evidence obtained independently of the grand jury investigation. Issue 1. Grand Jury Secrecy and Rule 6(e)
*418 The grand jury is the method adopted in our Constitution by which charges of serious Federal crimes are made. U.S. Const. amend. V. From the very beginning of its use in this country, grand jury proceedings have been kept secret. PittsburghPlate Glass Company v. United States, 360 U.S. 395, 399 (1959); Calkins, "Grand Jury Secrecy," 63 Mich. L. Rev. 455, 457 (1965). The reasons behind grand jury secrecy are manifold and compelling; indeed the Supreme Court has consistently recognized that the proper functioning of the grand jury system depends upon the secrecy of its proceedings. Douglas Oil Company v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979); Pittsburgh Plate Glass Company v. United States, supra at 400-401; United States v. Procter & Gamble, 356 U.S. 677, 681 (1958). [2]
*419 In 1945, the established tradition of grand jury secrecy was codified in Rule 6(e) of the Federal Rules of Criminal Procedure, [3] which provides generally that disclosure of matters occurring before the grand jury may be made "only when so directed by the court preliminarily to or in connection with a judicial proceeding." [4] In deciding whether to enter an order under Rule 6(e), the court is to exercise its discretion in favor of disclosure of grand jury material only where the party seeking disclosure has shown a "particularized need" for the information which outweighs the public interest in grand jury secrecy. Douglas Oil Company v. Petrol Stops Northwest, supra at 223; Pittsburgh Plate Glass Company v. United States, supra at 400; Allis-Chalmers Manufacturing Co. v. City of Fort Pierce, Florida, 323 F.2d 233, 242 (5th Cir. 1963). [5] The request must cover only the material for which there is shown to be a compelling need, and in considering the effects of disclosure on grand jury proceedings, the court is to consider not only *420 the immediate effects on a particular grand jury, but also the effects on the functioning of future grand juries. Douglas Oil Company v. Petrol Stops Northwest, supra at 222. Thus, the interest in grand jury secrecy is not eliminated merely because a particular grand jury has finished with its proceedings. Douglas Oil Company v. Petrol Stops Northwest, supra at 222; In Re Grand Jury Investigation, 414 F. Supp. 74 (S.D. N.Y. 1976). *421 Respondent concedes that the utilization of grand jury material by IRS employees for civil purposes prior to obtaining a 6(e) order would be in violation of amended Rule 6(e). [6] He maintains, however, that under the original rule which was in effect at the time the material was utilized, it was unclear who was allowed access to grand jury material and what uses could be made of the material. [7] Although we agree that under the original version there was ambiguity with regard to whether limited disclosure to certain agency personnel assisting the attorneys for the government was proper, even under the broadest interpretations, the rule clearly confined the disclosure and utilization to matters which were essential to enable the prosecutor to perform his duties before the grand jury. Nowhere do we find authority for the proposition that prior to obtaining a court order, agency personnel could freely convey grand jury information to colleagues working on civil aspects of a case, who could then use *422 the material in any way they deemed helpful. In so doing, IRS employees acted well beyond the scope of Rule 6ne) and the case law interpreting the rule. *423 We have in this case two separate and distinct types of disclosure and utilization of grand jury material prior to obtaining a court order. The first is disclosure by the Justice Department attorneys acting as prosecutors before the grand jury to special agents of the IRS, who assisted the prosecutors by evaluating testimony and documents and preparing questions for the witnesses. The second is disclosure by the IRS special agents to IRS Revenue Agent Ehrensing, and subsequently to other IRS employees, who utilized the grand jury material in reconstructing petitioners' civil tax liability. The question is whether either, neither, or both kinds of disclosure and utilization were proper, absent a court order under Rule 6(e). The first sentence of Rule 6(e) states that "[d]isclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties." "Attorney for the government" is defined in Rule 54(c) as the Attorney General, an authorized assistant of the Attorney *424 General, a United States attorney, and an authorized assistant of a United States attorney. Fed. R. Crim. P. 54(c). [8]Disclosure is allowed to attorneys for the government without a court order because as prosecutors before the grand jury, they are allowed to be present in the grand jury room during the presentation of the evidence. Rule 6(e), Advisory Committee Note to Subdivision (e), par. 1. Attorneys working for government agencies other than the Justice Department are not considered "attorneys for the government" within the meaning of Rule 6(e). In Re Grand Jury Proceedings, 309 F.2d 440 (3d Cir. 1962). Thus disclosure of grand jury material was refused under the first sentence of Rule 6(e) to lawyers from the Federal Trade Commission In Re Grand Jury Proceedings, supra; lawyers from the Securities and Exchange Commission In Re Grand Jury Investigation,414 F. Supp. 74 (S.D. N.Y. 1976); and lawyers from the Tennessee Valley Authority, United States v. General Electric Co., 209 F. Supp. 197 (E.D. Pa. 1962). [9] See also amended *425 Rule 6(e), Advisory Committee Notes on 1977 Amendment; In Re Grand Jury, 583 F.2d 128, 131 n. 2 (5th Cir. 1978) (a lawyer from the IRS is an agency, not a government attorney within the meaning of amended Rule 6(e)). Notwithstanding the restrictive definitions of "attorneys for the government" contained in Rule 54(c), it was the position of the Justice Department that an attorney for the government, without a court order, was authorized to make certain disclosures to investigating personnel from other government agencies for the purpose of aiding the prosecutor in the performance of his duties before the grand jury. Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings on H.R. 5864 Before the House Subcomm. on *426 Criminal Justice, Comm. on the Judiciary, 95th Cong., 1st Sess. 55 (1977) (statement of Acting Deputy Attorney General Richard L. Thornburgh). Government attorneys made such disclosures because often there were voluminous books and records which had to be deciphered before the information could be presented to the grand jury, and the government attorneys were not qualified to perform the analysis themselves. In Re William H. Pflaumer & Sons, Inc., 53 F.R.D. 464, 468 (E.D. Pa. 1971). Because investigations of federal crimes are instigated by other agency personnel, those agents were often needed by the prosecutor to assist him in evaluating evidence. S. Rept. No. 95-354, 6-8 (1977), reprinted in U.S. Code Cong. & Admin. News, pp. 527, 529-530; amended Rule 6(e), Advisory Committee Notes on 1977 Amendment. Although some courts held that the prosecutors should obtain a 6(e) order before utilizing agency personnel, Robert Hawthorne, Inc. v. Director of Internal Revenue, 406 F. Supp. 1098, 1126 (E.D. Pa. 1976), other courts held that limited disclosure to agency personnel for the purpose of rendering necessary assistance to the attorneys for the *427 government was allowable under the first sentence of Rule 6(e), or at least did not justify dismissal of the indictment. United States v. Evans, 526 F.2d 701, 707 (5th Cir. 1976), cert. denied 429 U.S. 818 (1976); United States v. Hoffa, 349 F.2d 20, 43 (6th Cir. 1965), affd. 385 U.S. 293 (1966); In Re William H. Pflaumer & Sons, Inc., supra at 475. [10]
*428 This disclosure and use of the grand jury material, however, was far from unfettered. The judicially-carved exception to the first sentence of Rule 6(e) which permitted disclosure without a court order to agency personnel actively assisting government attorneys was solely for the purpose of the grand jury investigation. In Re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir. 1956); In Re William H. Pflaumer & Sons, Inc., supra; United States v. Anzelmo, 319 F. Supp. 1106 (E.D. La. 1970); Amended Rule 6(e) Advisory Committee Notes; 123 Cong. Reg. H 7867 (daily ed. July 27, 1977), (remarks of Mr. Mann). Nothing in the decisions suggests that absent a court order, assisting personnel could then disseminate the information to their colleagues for use in a civil case, thus bypassing the discretionary authority of the court to allow disclosure for civil purposes and the protective judicial supervision under Rule 6(e). [11]
*429 Indeed, "[t]he idea that information obtained from the perusal of material in the possession of a grand jury may be used for the purpose of a civil proceeding is in direct conflict with the policy of secrecy of grand jury proceedings." In Re April 1956 Term Grand Jury, supra at 271. Congress has explicitly provided agencies with civil investigative procedures and powers which are wholly dissimilar from those enjoyed by the grand jury. In Re Grand Jury Proceedings, 309 F.2d 440, 443 (3d Cir. 1962); Note, "Administrative Agency Access to Grand Jury Materials," 75 Colum. L. Rev. 162, 175-182 (1975). If the work product of a grand jury is funneled to a government agency for civil use because it happens to have an interest in the subject matter, the grand jury process has been abused. In Re Grand Jury Investigation, 414 F. Supp. 74, 76 (S.D. N.Y. 1976). In In Re April 1956 Term Grand Jury, supra, grand jury itself turned over to treasury agents voluminous records for the purpose of examining them and reporting *430 back to the grand jury. The court held that while the grand jury had the authority to release the records to the agents solely for the purpose of obtaining their assistance, the agents, having access to the records and documents had no right to use them for any purpose whatsoever except to assist the grand jury in its work. When Congress amended Rule 6(e) so as to codify the practice of allowing Justice Department attorneys upon their own authority to make limited disclosures to agency personnel assisting the attorneys before the grand jury, it received assurances that the amendment simply involved a clarification rather than a substantive change, and would not open the possibility of unwarranted breaches of grand jury secretcy or the improper use of grand jury evidence. [12] To leave no doubt about the intended scope of the amendment, Congress chose to state explicitly the restrictions that existed under the original rule, that assisting agency personnel to whom disclosures are made may not *431 use the grand jury material for any purpose other than assisting the attorneys for the government in the performance of their duty to enforce federal criminal law. S. Rept. No. 95-354, 6 (1977), reprinted in 1977 U.S. Code Cong. & Admin. News 527, 529-530; 123 Cong. Rec. H 7866-7868 (daily ed. July 27, 1977), (remarks of Mr. Mann). Although before the 1977 amendment, it may have been unclear whether it was proper, absent a court order, for attorneys for the government to make limited disclosure of grand jury material to agency personnel actively assisting the government attorneys in the performance of their duties before the grand jury, we find no confusion, then or now, about whether the material could be disclosed to other agency personnel for use in a civil case. Therefore we hold that: (1) disclosure to the IRS special agents for the purpose of assisting the government attorneys in the performance of their duties before the grand jury was not in violation of Rule 6(e); and (2) disclosure of grand jury material by IRS special agents to IRS Revenue Agent Ehrensing and the dissemination *432 of grand jury material among IRS personnel for use in petitioners' civil tax investigation constituted a serious and substantial breach of grand jury secrecy in violation of Rule 6(e). The fact that years after the grand jury material had been disclosed to IRS employees, IRS attorneys sought disclosure under Rule 6(e) from the Las Vegas District Court without revealing that they already had read and utilized virtually all of the information makes the abuse of the grand jury system even that much more flagrant. *433 Issue 2. The Remedy
It is clear that respondent must not be allowed to utilize the grand jury material and the leads derived therefrom in the civil trial of petitioners before this Court. The proper procedure, had respondent wanted the transcripts for trial, would have been to make an application for a 6(e) order to the Las Vegas District Court prior to any use in the civil case, stating exactly which portions of the transcript were needed and the purpose for which they were to be used. The District Court could then have weighed the requisite "particularized need" for the grand jury material against the traditional policy of grand jury secrecy in deciding whether to grant disclosure. In the instant case however, respondent's agents illegally utilized all of the grand jury material for general discovery purposes in a civil tax case. When a belated application was made for a 6(e) order, the District Court was misled as to the length of time the IRS was involved with the case and was not informed of the prior utilization of grand jury material. Thus IRS employees not only breached grand jury ecrecy, considered to be fundamental to the function and operation of the institution, *434 Douglas Oil Company v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979), but also circumvented the investigative procedures Congress provided the agency through statute, [13] and made a mockery of the protective role of the judiciary in supervising disclosure of grand jury material under Rule 6(e). Respondent argues that in releasing the grand jury information to petitioners herein, the District Court in Nevada in effect issued a "curative" order dispositive of the suppression motion and other motions pending in this Court. But there was no motion of any kind made in or pending before the District Court. When this is considered in light of the long history of misrepresentations, the refusal of the United *435 States Attorney to appear and ask for a "curative" 6(e) order, as requested, and the request of petitioners' lawyers to be heard in connection with any action taken by the District Court that would affect their motions before this Court, we do not believe the District Court issued a "curative" order. Rather the material was simply made available to petitioners in connection with the motions before this Court and any action ultimately taken on the motions. The only effect of a "curative" order at that point would have been to dispose of the motion to suppress before this Court without giving anyone an opportunity to appear and be heard. In view of the long history recounted herein, it is clear that the District Court declined to do that, leaving the matter for our determination. The Supreme Court has not resolved the issue of whether suppression of illegally obtained evidence is an appropriate remedy to apply in a Federal civil tax proceeding. See United States v. Janis, 428 U.S. 433 (1976). [14] However, the Court in Janis acknowledged without criticism a line of cases where illegally obtained evidence was suppressed in civil trials where the violations *436 were committed by agents of the sovereign that sought to use the evidence. See, Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969), cert. denied 396 U.S. 986 (1969); Knoll Associates, Inc. v. F.T.C., 397 F.2d 530 (7th Cir. 1968); Powell v. Zuckert, 366 F.2d 634 (D.C. Cir. 1966); Rogers v. United States, 97 F.2d 691 (1st Cir. 1938); Anderson v. Richardson, 354 F. Supp. 363 (S.D. Fla. 1973); State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F. Supp. 391 (S.D. Iowa 1968), affd. sub nom. Standard Oil Co. v. State of Iowa, 408 F.2d 1171 (8th Cir. 1969); United States v. Stonehill, 274 F. Supp. 420 (S.D. Cal. 1967), affd. 405 F.2d 738 (9th Cir. 1968), cert. denied 395 U.S. 960 (1969); United States v. Blank, 261 F. Supp. 180 (N.D. Ohio 1966); Lassoff v. Gray, 207 F. Supp. 843 (W.D. Ky. 1962). *437 Since Janis was decided, courts have held that the exclusionary rule does apply to civil proceedings in the case of "intrasovereign" violations. Savina Home Industries v. Secretary of Labor, 594 F.2d 1358, 1362-1363 (10th Cir. 1979); Linden v. United States, 49 U.S.L.W. 2355 (S.D. Iowa 1980); OKC Corp. v. Williams, 461 F. Supp. 540, 551-552 (N.D. Tex. 1978). Furthermore, it is clear that courts, commentators, and even governmental agencies consider suppression to be an appropriate remedy where, as in this case, grand jury material is improperly disclosed and used for civil purposes in violation of Rule 6(e). See In Re Grand Jury Investigation No. 78-184,     F.2d     (9th Cir. April 2, 1981), 81-1 USTC par. 9373); Matter of Fred R. Witte Center Glass No. 3 v. United States, 544 F.2d 1026, 1029 (9th Cir. 1976); In Re Special March 1974 Grand Jury, Etc., 541 F.2d 166, 170 (7th Cir. 1976); *438 Coson v. United States, 533 F.2d 1119, 1120 (9th Cir. 1976); Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings on H.R. 5864 Before the House Subcomm. on Criminal Justice, Comm. on the Judiciary, 95th Cong., 1st Sess. 87, 55-56 (1977) (statement of Judge Roger Robb, U.S. Court of Appeals for the District of Columbia Circuit, and statement of Acting Deputy Attorney General Richard L. Thornburg); Note, "Administrative Agency Access to Grand Jury Materials," 75 Colum. L. Rev. 162, 188 (1975). The exclusionary rule serves a dual purpose: principally that of deterring illegal conduct and also that of protecting judicial integrity. United States v. Payner,     U.S.     (1980); Janis v. United States, 428 U.S. 433, 446, 458 n. 35 (1976). Application of the exclusionary rule is not limited to constitutional violations, but is also appropriate where evidence is obtained in violation of Federal statutes or Federal rules of procedure. United States v. Blue, 384 U.S. 251, 255 (1966); Mallory v. United States, 354 U.S. 449 (1957); *439 Upshaw v. United States, 335 U.S. 410 (1948); McNabb v. United States, 318 U.S. 332 (1943); Nardone v. United States, 308 U.S. 338 (1939); United States v. Genser, 582 F.2d 292 (3d Cir. 1978). The reasons for applying the rule are well served in the case before us. The conduct sought to be deterred in this case is the illegal use of grand jury material by Federal government employees in a civil investigation. As agency assistance to prosecutors before the grand jury becomes more prevalent, the temptation for assisting personnel to utilize information presented to the grand jury in their own civil investigation will also increase, unless the offending agency is denied the benefits of the illegality. Of course, if the societal costs of suppressing the evidence outweigh the potential benefits of applying the rule, the evidence should not be excluded. United States v. Janis, 428 U.S. 433 (1976). However, in the instant case, the cost to society of requiring the IRS to proceed at civil trial with *440 evidence obtained independent of the grand jury investigation is minimal, [15] and the potential benefits of applying the rule are compelling. *441 Unlike Janis, the exclusion here is not in addition to exclusion in a prior criminal trial, provides far more than marginal incremental deterrence, and is directed at the offending officials who specifically acquired the evidence to use in this particular civil proceeding. Indeed, exclusion in the criminal proceedings would seldom if ever be an effective and practical remedy for abuses of grand jury secrecy like those before us. In some cases there will be no indictment or no trial. Additionally, the violations generally will be unknown until long after any criminal trial resulting from the grand jury proceedings. Finally, the societal costs of exclusion in a criminal trial would be greater than in a civil trial without any increase in deterrent effect. Consequently, exclusion is a compelling remedy in the present case. The Supreme Court has recognized that in developing the exclusionary rule through the years, it "acted in the absence of convincing empirical evidence and relied instead on its own assumptions of human nature and the interrelation-ship of the various components of the law enforcement system." Janis v. United States, 428 U.S. 433, 459. *442 We are here concerned principally with one centralized Federal agency--the Internal Revenue Service. The need for a Rule 6(e) order prior to civil use of the grand jury material was recognized throughout this proceeding by everyone, but there was, as is sometimes the case, a good deal of buck-passing and wishful thinking. No one really thought that the gradual accumulation of Rule 6(e) violations would ultimately be self-defeating. We cannot read the record in this particular case without concluding that the violations of grand jury secrecy we confront would be extremely unlikely to occur in the face of a decision clearly prescribing the consequences we provide today. [16]
*443 A critical concern, in addition to deterring illegal use of grand jury material by assisting Federal agency personnel, is the impact on the functioning of future grand juries and on grand jury secrecy of permitting the evidence to be used. Despite criticisms of the institution, the grand jury holds a pre-eminent role in the accusation of serious Federal crimes in this country. Yet, both Congress and the Supreme Court have continually reiterated that if the institution is to perform its duties properly, its proceedings must be kept secret. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399-400 (1959); Fed. R. Crim. P. 6(e). Any position that undermines grand jury secrecy through reluctant tolerance of repeated and substantial violations of Rule 6(e) could well inhibit the deliberations of other grand juries and the willingness of witnesses to appear and testify freely in the future. See United States v. Procter & Gamble, 356 U.S. 677, 681-682 (1958); *444 Baker v. United States Steel Corporation, 492 F.2d 1074, 1079 (2d Cir. 1974); In Re Grand Jury Investigation, 414 F. Supp. 74, 76 (S.D. N.Y. 1976). [17]
We do not have before us an inadvertent blunder by one official or an isolated instance of noncompliance with technical rules of procedure. Rather, the record shows intentional and flagrant violations of grand jury secrecy as codified in Rule 6(e) which continued over a period of many years, and has yet to be remedied. That the courts were ignored during the first few years of utilizing *445 grand jury material and then misled about the facts when it was finally felt necessary to obtain some kind of judicial imprimatur cannot and should not be tolerated. Therefore, we rule that material obtained from the Miami and Las Vegas grand jury investigations and any leads derived from the use of the grand jury material may not be used by respondent in petitioners' civil tax trial before this Court. Respondent has the burden of going forward with evidence which was acquired separate from and independent of the grand jury investigation. See on this point Suarez v. Commissioner, 58 T.C. 792, 813-815 (1972). Accordingly, An appropriate order will be entered. ORDER
For reasons stated in the Memorandum Sur Order attached hereto and served herewith, it is ORDERED, That (1) Petitioners' motion to suppress and motion to shift burden of going forward is granted; (2) Petitioners' motion to strike is denied; (3) Petitioners' motion to shift burden of proof is denied; (4) Petitioners' motion to dismiss is denied; and (5) Petitioners' motion for partial summary judgment is denied. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in issue.↩
2. In Douglas Oil Company v. Petrol Stops Northwest, 441 U.S. 211, 219, n. 10, the Supreme Court again approved of the statement of the reasons for grand jury secrecy given in United States v. Rose, 215 F.2d 617, 628-629 (3d Cir. 1954): (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.↩
3. Whenever reference is made to "Rule 6(e)" throughout this opinion, it refers to Fed. R. Crim. P. 6(e) prior to the 1977 amendment, since it was prior to 1977 that most of the alleged violations occurred. Fed. R. Crim. P. 6(e) as amended July 30, 1977 will be referred to as "amended Rule 6(e)↩." The same abbreviations will be used when referring to the Advisory Committee notes on the rule. 4. Prior to 1977, Rule 6(e) provided as follows: Rule 6. The Grand Jury
(e) Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons. The third sentence of Rule 6(e) that "[n]o obligation of secrecy may be imposed upon any person except in accordance with this rule" is in reference to witnesses before the grand jury. The Advisory Committee believed that placing a seal of secrecy on witnesses might lead to injustice if witnesses were not permitted to make a disclosure to counsel or an associate. Rule 6(e)↩Advisory Committee Note to Subdivision (e), par. 2. 5. Typical examples of "particularized need" include needing a portion of a grand jury transcript at trial to impeach a witness, to refresh his recollection, or to test his credibility. United States v. Procter & Gamble, 356 U.S. 677, 683 (1958). A state or a federal administrative agency, like private litigants, must demonstrate to the court a particularized need jury secrecy. State of Texas v. United States Steel Corp., 546 F.2d 626 (5th Cir. 1977); In Re Grand Jury Proceedings, 29 F.R.D. 151 (E.D. Pa. 1961), affd. 309 F.2d 440 (3d Cir. 1962). In addition, a federal agency may not obtain disclosure under Rule 6(e) for the purpose of an administrative investigation, as the grand jury material in those circumstances is not sought for use in a judicial proceeding. In Re Grand Jury Proceedings, 309 F.2d 440, 443-444↩ (3d Cir. 1962) (investigation of possible violations of cease and desist orders by the Federal Trade Commission).
6. Effective July 30, 1977, amended Rule 6(e) provides as follows: Rule 6. The Grand Jury
(e) Secrecy of Proceedings and Disclosure.-- (1) General rule.--A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court. (2) Exceptions.-- (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to-- (i) an attorney for the government for use in the performance of such attorney's duty; and (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. (B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made. (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made-- (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. (3) Sealed Indictments↩.--The Federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons. 7. Respondent now argues that Rule 6(e) prior to its amendment was ambiguous, notwithstanding the fact that we have in evidence a letter from the Chief Counsel's Office of the Internal Revenue Service dated February 12, 1970 which states that "[w]hat is clear is that unless such an order is granted, the Service could not use, in connection with any civil tax determination, any of the knowledge gained by its particular employees who assisted the attorney for the Government in evaluating the grand jury developed evidence for indictment purposes. In re Grand Jury Proceedings, 309 F.2d 440↩ (3d Cir. 1962)." The IRS clearly recognized this constraint on many occasions prior to the initial efforts to acquire even a limited 6(e) order in 1975. (In, for example, the February 12, 1971 report of Special Agent Baruffi; the March 19, 1971 letter of Mr. Salus of the IRS to the Assistant Attorney General; and the November 30, 1971 reopening memorandum of Revenue Agent Ehrensing).
8. Attorneys for the Justice Department are "attorneys for the government" as defined in Rule 54(c)8 because they are "authorized assistants of the Attorney General." In Re Grand Jury, 583 F.2d 128, 130↩ (5th Cir. 1978). 9. In addition, "attorneys for the government" do not include municipal, state, or county attorneys. Special February 1971 Grand Jury v. Conlisk, 490 F.2d 894↩ (7th Cir. 1973).
10. Despite the Justice Department's position that an attorney for the government was authorized to make limited disclosure of grand jury material to assisting agency personnel without a court order, it was the policy of the IRS to obtain a 6(e) order prior to disclosure of grand jury material whenever its employees were called upon to assist the attorneys for the government in grand jury proceedings. See Robert Hawthorne, Inc. v. Director of Internal Revenue, 406 F. Supp. 1098, 1107 n. 12 (E.D. Pa. 1976); In Re July 1973 Grand Jury, 374 F. Supp. 1334 (N.D. Ill. 1973); Kirkland, "Administrative Agency Access to Grand Jury Material Under Amended Rule 6(e)," 29 Case W. Res. L. Rev. 295, 301↩ (1978).
11. It is within the sound discretion of the trial court to determine whether grand jury transcripts should be released. If the court decides in favor of disclosure, it may limit the material disclosed and may impose restrictions on its use. Douglas Oil Company v. Petrol Stops Northwest, 441 U.S. 211, 223↩ (1979).
12. The pending amendment to rule 6(e) proposes to alter the first provision only, so as to include in the current definition of the term attorneys for the Government "such other personnel as are necessary to assist the attorneys for the Government in the performance of their duties." In our view, this proposal is of a clarifying rather than a substantive nature. It has long been the Department of Justice's interpretation of the existing provision, supported by decisions of Federal appellate courts, that an attorney for the Government, upon his own authority and without an order from the court, may make certain disclosures to investigatory personnel for the purpose of discharging his duties as a Government attorney. We understand that some persons are concerned that the proposed amendment will further the possibility of unwarranted breaches of grand jury secrecy and improper use of grand jury evidence. I want to assure this subcommittee that the Department has a jealous regard for grand jury secrecy and would not wish the present restrictions to be eroded. In our view, however, the proposed amendment will not have any such effect. Rather, by recognizing the realities of present practice, necessity, and case law, it serves to clarify what has been a persistent and perplexing source of confusion. Let me stress that the amendment will not permit the Department of Justice to take advantage of or make disclosures to investigative agents or experts in order to aid other Federal agencies in conducting their own investigations. Grand juries may not lawfully collect or disseminate evidence intended for use in other proceedings, and a person who is a party in such a proceeding, brought against him by another Government agency and related to the subject matter of a prior grand jury investigation, may properly move to suppress any evidence, and the fruits thereof, found by the court to have been used against him in violation of the principle. Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings on H.R. 5864 Before the House Subcomm. on Criminal Justice, Comm. on the Judiciary, 95th Cong., 1st Sess. 55 (1977) (statement of Acting Deputy Attorney General Richard C. Thornburgh).↩
13. The statutory provisions delineating the investigative procedures available to the IRS are found in secs. 7601 through 7611. The powers conferred on the agency by statute are a great deal more restrictive than those enjoyed by the grand jury. See note, "Administrative Agency Access to Grand Jury Materials," 75 Colum. L. Rev. 162, 175-178↩ (1975).
14. The Court in United States v. Janis, 428 U.S. 433↩ (1976) held that the exclusionary rule should not be extended to forbid the use in a civil proceeding of one sovereign (the Federal government) of evidence illegally seized by a criminal law enforcement agent of another sovereign (the state government). The Court reasoned that when two different sovereigns are involved, the likelihood of deterring illegal conduct of the local law enforcement official was marginal and did not outweigh the societal costs of suppressing the evidence in a Federal civil case, since the offending officer, concerned with the criminal enforcement process, is already "punished" by excluding the evidence at the state and Federal criminal trials. Of course, the situation before us is entirely different in that the illegal conduct sought to be deterred is that of agents of the same sovereign, indeed of the same Federal agency, that now seeks to benefit from the illegality at trial.
15. As we have pointed out before, the costs of applying the rule in the civil tax case appear to be substantially less than in a criminal case. Protecting the Federal fisc, however important as it may be, is surely less urgent than convicting the guilty criminal. See Suarez v. Commissioner, 58 T.C. 792, 805 (1972). In United States v. Janis, 428 U.S. 433, 457 (1976), the Supreme Court criticized our decision in Suarez, because we did not distinguish between intersovereign and intrasovereign uses of illegally obtained evidence in assessing the deterrent effect of applying the exclusionary rule. However, the case before us now concerns the use by the same sovereign which violated Rule 6(e). Indeed it is the civil↩ use of the grand jury material by IRS employees which constitutes the violation, and thus, suppression in the civil trial to which the IRS is a party would appear to have a substantial deterrent effect.
16. If any agency should be held to the highest standards, it is the Internal Revenue Service. As was said in an earlier case: The Commissioner of Internal Revenue recently testified before Congress that the Service has "a gold mine of information in our tax system. We have more information about more people than any other agency in this country." They also have very broad investigative powers. Special agents, being among the best educated and most highly trained investigative officers in the world, are fully capable of utilizing these tremendous resources. Additionally, these officers do not perform their duties in anything approaching a tense atmosphere engendering fear for their safety, or requiring split second decisions under circumstances where anyone's physical safety is threatened. In short, if ever there existed a situation where investigative officers should be held to the highest standards, it is the instance before the Court. [Brod v. Commissioner, 65 T.C. 948, 958, 959 (1976) (Wilbur, J.↩ concurring) [Footnote references omitted.]]
17. Although the focus herein is on the impact of this order on the proper functioning of future grand juries, we are not unmindful of the fact that the proceedings of the Miami and Las Vegas grand juries have never been made part of any public record. Thus, there is still a residual interest in the secrecy of those proceedings, despite the fact that the proceedings have been completed and that disclosure was made to the defendants. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222, n. 13 (1979); State of Illinois v. Sarbaugh, 552 F.2d 768↩ (7th Cir. 1977).