THOMAS A. GRAHAM AND ELIZABETH GRAHAM,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

MERIDIAN ENGINEERING, INC. OF PENNSYLVANIA,
PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 7603–80, 7604–80.     Filed February 27, 1984.

*Leonard J. Bucki* and *Dennis L. Cohen,* for the petitioners.
*Eugene J. Wien,* for the respondent.

## OPINION

PARKER, *Judge:* Respondent has determined the following
deficiencies in and additions to these petitioners' Federal
income taxes:

| Docket No. | Year | Deficiency | Sec. 6653(b)[1] |
|------------|------|------------|-----------------|
| 7603–80 | 1969 | $34,301 | $17,151 |
| 7603–80 | 1970 | 62,689 | 31,345 |
| 7603–80 | 1971 | 64,849 | 32,425 |
| 7603–80 | 1972 | 28,513 | 14,256 |
| 7604–80 | 1969 | 36,344 | 18,172 |
| 7604–80 | 1970 | 58,905 | 31,603 |
| 7604–80 | 1971 | 74,700 | 37,350 |
| 7604–80 | 1972 | 71,291 | 35,646 |

Respondent's statutory notices of deficiency to these petition-
ers were based upon information respondent secured from

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as
amended and in effect during the taxable years in question.

grand jury proceedings. We must decide whether respondent's use of these grand jury materials to determine deficiencies and additions against these petitioners invalidates the statutory notices.

These cases were submitted fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure, and the stipulated facts are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Petitioners Thomas A. Graham and Elizabeth Graham (the Grahams), husband and wife, resided in Gwynedd Valley, Pa., at the time they filed their petition herein. The Grahams timely filed their joint Federal income tax returns for the taxable years 1969, 1970, 1971, and 1972, using the cash receipts and disbursements method of accounting.

Petitioner Meridian Engineering, Inc. of Pennsylvania (Meridian) is a corporation and its last address, effective at the time it filed its petition herein, was in Philadelphia, Pa. Meridian timely filed its corporate income tax returns for the calendar years 1969, 1970, 1971, and 1972, using the accrual method of accounting. Petitioner Thomas A. Graham was president, chairman of the board, and principal shareholder of Meridian.

In September 1971, a Federal grand jury, sitting in Philadelphia, began an investigation of certain purchases and contracts between various vendors and contractors and the city of Philadelphia. The investigation was to determine possible Federal criminal violations, including extortion, racketeering, bribery, mail fraud, and conspiracy. On October 4, 1971, the U.S. attorney for the Eastern District of Pennsylvania and a Justice Department attorney filed an ex parte motion with the District Court, pursuant to rule 6(e) of the Federal Rules of Criminal Procedure (hereinafter rule 6(e)),[2]

---

[2]Prior to 1977, rule 6(e) provided as follows:

Rule 6. The Grand Jury

\* \* \* \* \* \* \*

(e) Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court

seeking authorization to disclose to agents, special agents, and employees of the Internal Revenue Service matters occurring before the grand jury. In support of this motion, the Government attorneys represented, in pertinent part, as follows:

3. The investigation requires careful meticulous analysis of an extremely large volume of business records, of the contractors and vendors involved, and also of the City of Philadelphia.

4. The above-named attorneys of the Government have sought the assistance of agents, special agents, and employees of the Internal Revenue Service to conduct the necessary analysis of records and to provide the necessary supportive investigative personnel, all under the aegis of the said attorneys for the government.

5. To utilize the said assistance of agents, special agents, and employees of the Internal Revenue Service it is necessary that the said attorneys for the Government be authorized to disclose to the agents, special agents and employees of the Internal Revenue Service books, records, documents and transcripts of testimony before the United States Grand Jury.

6. It is necessary for the said agents, special agents and employees of the Internal Revenue Service, upon receipt of such matter to use it in their official duties, *for both civil and criminal* purposes, in order to both assist the Grand Jury and the attorneys for the Government in a complete manner, and to fulfill the obligations of their offices. [Emphasis added.]

On October 4, 1971, District Court Judge Edward R. Becker entered an order granting the ex parte motion, providing as follows:

### ORDER

AND NOW, THIS 4th day of October, 1971, upon consideration of the Ex Parte Motion pursuant to [Criminal] Rule 6(e) for Authorization to Disclose Matters Occurring Before the Grand Jury, filed herein, and the representations made in support thereof, it is hereby

### ORDERED

that the United States Attorney and Special Attorneys of the United States Department of Justice are authorized to utilize the assistance of agents, special agents and employees of the Internal Revenue Service in this Grand Jury Investigation, and may give access to such persons of books, records,

---

preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons.

documents and transcripts of testimony before the Grand Jury in this investigation, and the said agents, special agents, and employees shall not be prohibited from utilizing such material in the course of their official duties, *for either criminal or civil purposes*, provided that the subpoenaed material shall remain at all times under the aegis of attorneys for the Government. [Emphasis added.]

On January 15, 1973, the grand jury issued a subpoena directing Meridian to produce the following records:

Sales, Journals, Sales Invoices, Accounts Payable, Ledgers General Journals, General Ledgers, Payroll Records, Invoices, Purchase Orders, Notes Payable, Loans Payable (Contracts and Records), Articles of Incorporation, Stock Transfer Book, Minutes Book, Cash Receipts Book, Cash Disbursement Book, Bank Ledger Statements, Check Stub Registers, Cancelled Checks, Duplicate Deposit Tickets, Petty Cash Book, Petty Cash Vouchers, Purchase Journals, Purchase Invoices, Memoranda, Correspondence, and all other supporting documents relating to all business transactions, income, expenses, and balance sheet items shown on filed tax returns; all for calendar years or fiscal years ended 1969, 1970, and 1971.

The subpoena directed Meridian to deliver the subpoenaed records to the Internal Revenue Service in Philadelphia, Pa. Meridian complied with the subpoena.

On October 25, 1973, another Federal grand jury was convened in Philadelphia to investigate possible Federal criminal violations, including interference with commerce, conspiracy to defraud the Government, interstate travel in aid of racketeering, and tax evasion.

On November 20, 1973, the U.S. attorney filed an ex parte petition under rule 6(e) for authorization to disclose matters occurring before the grand jury to agents of the Internal Revenue Service "to assist the Grand Jury in determining whether there have been any violations of Title 18 and Title 26 of the United States Code; *and if the above-mentioned investigation discloses additional tax liabilities, to use this information for determining the exact civil tax liabilities due and owing to the United States.*" (Emphasis added.) In support of this petition, the U.S. attorney represented, in pertinent part, as follows:

2. In connection with this investigation, information and evidence has been obtained by the Grand Jury that could be of material assistance to the Internal Revenue Service with respect to official criminal investigations being conducted by that agency, and the disclosure of such evidence to the

Internal Revenue Service would enable that agency to be of invaluable assistance to the Grand Jury in the investigation being conducted by the Grand Jury.

3. The Grand Jury has requested the assistance of Federal agents who possess the requisite expertise to assist them in analyzing the notes of testimony of witnesses who testify and the books and records subpoenaed before them.

The U.S. attorney's prayer in his petition also asked that "agents, officials and employees of the Internal Revenue Service * * * shall not be prohibited from utilizing such [grand jury] material in the course of their official duties *for civil purposes*." (Emphasis added.)

On November 20, 1973, District Court Judge A. Leon Higginbotham, Jr., entered an order granting the ex parte petition, providing as follows:

### ORDER

AND NOW, this 20th day of November, 1973, upon consideration of the Ex Parte Motion pursuant to Rule 6(e) for Authorization to Disclose Matters Occurring Before the Grand Jury, filed herein, and the representations made in support thereof, it is hereby

### ORDERED

that the United States Attorney is authorized to utilize the assistance of agents, special agents and employees of the Internal Revenue Service in this Grand Jury Investigation, and may give access to such persons of books, records, documents and transcripts of testimony before the Grand Jury in this investigation, and the *said agents, special agents and employees shall not be prohibited from utilizing such material in the course of their official duties, for either criminal or civil purposes*, provided that the subpoenaed material shall remain at all times under the aegis of the attorneys for the Government. [Emphasis added.]

On April 4, 1974, District Court Judge Daniel H. Huyett III, approved the granting of immunity to petitioner Thomas A. Graham in connection with his testimony before the October 25, 1973, grand jury. On April 24, 1974, Graham was subpoenaed to appear before the grand jury and to produce—

(1) All cancelled checks drawn on any individual joint or trustee bank account for the period from 1969 through 1973 inclusive; (2) All bank statements drawn on any individual joint or trustee bank account for the period from 1969 through 1973 inclusive; (3) All bank deposit slips drawn on any individual joint or trustee bank account for the period from 1969

through 1973 inclusive; and (4) All diaries, appointment books, schedule books, calendars reflecting appointments or meetings for the year 1973.

Graham moved to quash the subpoena, or alternatively, for a protective order directing that no documents produced pursuant to the subpoena be turned over to Internal Revenue agents for their civil investigation. In support of his motion, Graham argued, inter alia, that the rule 6(e) order granting the Internal Revenue Service access to the subpoenaed materi-al authorized a misuse of the grand jury's powers, that the instant subpoena had been issued solely for the purpose of a civil tax investigation, and that the use of the grand jury was a mere subterfuge to supply records to the Internal Revenue Service for civil purposes.

In response to Graham's motion, the U.S. attorney repre-sented that Graham's testimony and production of documents were necessary to the grand jury's criminal investigation. In his memorandum in opposition to Graham's motion, the U.S. attorney argued, inter alia: (1) That there was no bad faith or improper motive in the issuance of the grand jury subpoena; (2) that the issue of the civil use of the subpoenaed material was not presently before the District Court, specifically stat-ing:

It is submitted that the appropriate time to raise any issues regarding the civil use of material subpoenaed by the grand jury is when and if the materials are used for a civil purpose. Furthermore, it is submitted that all questions regarding the use of subpoenaed materials for civil tax purposes should properly be addressed to the Tax Court in accordance with the usual procedures for contesting civil tax questions;

and (3) that in any event, the November 20, 1973, rule 6(e) order was proper and in accord with existing legal standards governing the use of grand jury material, including possible civil use of the grand jury materials by the Internal Revenue Service.

On June 3, 1974, Judge Daniel H. Huyett III, issued the following order:

### ORDER

AND NOW, this 3rd day of June, 1974, upon consideration of Thomas A. Graham's Motion to Quash Subpoena Or, in the Alternative, Motion For Protective Order and the Government's Response thereto, after consider-

ation of the memoranda of law filed by both parties and after hearing oral argument by both parties, it is hereby ORDERED that the motion to quash the subpoena duces tecum to Thomas A. Graham be and is hereby DENIED and it is further ORDERED that the alternative motion for a protective order with respect to documents produced pursuant to said subpoena be and is hereby DENIED.

On February 20, 1980, respondent issued and mailed to the Grahams and to Meridian statutory notices of deficiency covering the taxable years 1969 through 1972. The primary adjustment to the Grahams' income for the taxable years 1969 through 1972 was for unreported dividend income received from Meridian. The primary adjustment to Meridian's income for the taxable years 1969 through 1972 was for disallowed business expenses. Most of the constructive dividends to the Grahams are the business expenses disallowed to Meridian. The information upon which respondent determined the deficiencies and fraud additions was based on or gleaned from documents, testimony, and other information secured by agents of the Internal Revenue Service from these grand jury proceedings.

Petitioners allege that the Internal Revenue Service's use of these grand jury materials constituted misuse and abuse of those proceedings, requiring invalidation of the statutory notices of deficiency. Respondent, while admitting his use of the grand jury materials, denies that such use was improper or that the statutory notices are invalid. Petitioners declined the opportunity for a trial and have stipulated[3] as follows:

5. Petitioners Thomas A. Graham and Elizabeth Graham agree that if it is finally determined that the notice of deficiency issued to them for the years in issue is not invalid the deficiencies in income tax and additions to tax determined therein, although not admitted, are uncontested so that decision may be entered in accordance with respondent's determinations contained in the statutory notice of deficiency * * * without the necessity for the introduction of any evidence by petitioners or respondent.

10. Petitioner Meridian Engineering, Inc. of Pennsylvania agrees that if it is finally determined that the notice of deficiency covering the years in issue is not invalid the deficiencies in income tax and additions to tax determined therein are correct, although not admitted, are uncontested so that decision may be entered in accordance with respondent's determinations contained

---

[3]There are slight differences in the wording of these two paragraphs of the stipulation, but the parties have not suggested that these differences are meaningful. We attach no significance to the different wording.

in the statutory notice of deficiency * * * without the necessity for the introduction of any evidence by petitioner or respondent.

The parties devoted most of their argument to the question of whether respondent's use of the grand jury materials to determine deficiencies and the fraud additions against these petitioners was proper. However, in two recent cases addressing the parameters of rule 6(e)(2) and (3), as presently in force,[4] the Supreme Court reaffirmed the traditional secrecy of grand jury proceedings and severely limited Internal Revenue Service access to grand jury materials for civil tax purposes. See *United States v. Sells Engineering, Inc.*, 463 U.S. 300 (1983); *United States v. Baggot*, 463 U.S. ___ (1983).

Rule 6(e)(2) of the Federal Rules of Criminal Procedure provides generally that grand jury proceedings are secret. Rule 6(e)(3) contains exceptions permitting disclosure of grand jury materials in certain situations. Rule 6(e)(3)(A)(i) (hereinafter (A)(i)) permits disclosure without a court order to "an

---

[4]Rule 6(e)(2) and (3), as discussed by the Supreme Court and without certain amendments effective as of Aug. 1, 1983, read as follows:

(e) Recording and Disclosure of Proceedings.

*       *       *       *       *       *       *

(2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) Exceptions.

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

attorney for the government for use in the performance of such attorney's duty." Rule 6(e)(3)(A)(ii) (hereinafter (A)(ii)) permits similar automatic disclosure without a court order to certain Government personnel, including IRS agents, who are considered necessary "to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Rule 6(e)(3)(C)(i) (hereinafter (C)(i)) permits disclosure under a court order issued "preliminarily to or in connection with a judicial proceeding." Addressing these exceptions to the rule of grand jury secrecy, the Supreme Court, in *Sells Engineering* ruled that Justice Department lawyers cannot obtain grand jury materials for civil purposes under the automatic disclosure provisions of (A)(i) and that both the (A)(i) and (A)(ii) automatic disclosure provisions are limited to criminal law enforcement purposes. Thus, any disclosure to Internal Revenue agents, special agents, or other personnel for civil purposes is now clearly limited to disclosure under court order under (C)(i) upon a showing of "particularized need." In the *Baggot* case, the Supreme Court further held that a civil tax audit is not "preliminarily to or in connection with a judicial proceeding" within the meaning of (C)(i).

Thus, while the full scope of the Supreme Court's holdings in *Sells Engineering* and *Baggot* may be the subject of continuing disagreement and debate,[5] it is clear that an IRS civil tax audit cannot be considered as "preliminary to or in connection with a judicial proceeding" within the meaning of (C)(i). The present case involves rule 6(e) orders issued prior to the 1977 amendment of the rule and prior to these Supreme Court cases, which orders expressly allowed the IRS agents and personnel to use the grand jury materials for civil tax purposes.

In his supplemental brief addressing the impact of the Supreme Court's *Baggot* and *Sells Engineering* cases, respondent appears to concede, as he must, that a civil tax audit is no longer a permissible ground for granting access to grand jury materials under rule 6(e)(3)(C)(i). Instead, respondent argues that the Supreme Court's rulings in *Baggot* and *Sells Engi-*

---

[5] See the dissenting opinions in both cases. See also Bender & Bender, "Supreme Court in *Sells* and *Baggot* Lays Down Tests for Disclosing Grand Jury Materials," 59 J. Tax. 138–141 (1983); Miller, "Civil Tax Audit Access to Grand Jury Materials—*United States v. Baggot*," 51 U.S.L.W. 5075 (June 30, 1983); Tax Management Memorandum, TMM 83–21, at 3–8 (Oct. 17, 1983); Garbis, Struntz & Saltzman, "What the Tax Practitioner Should Know About the Supreme Court's *Baggot* and *Sells* Decisions," Fed. Taxes (Dec. 28, 1983).

*neering* should be applied only prospectively. Respondent also seems to argue that District Court's orders under rule 6(e) preclude our review of respondent's access to and use of grand jury materials in this case.[6] For purposes of our decision, we assume without deciding that respondent's use of the grand jury materials was improper and that the Supreme Court's *Baggot* and *Sells Engineering* rulings apply with full retroactive effect. See *Sells, Inc. v. United States*, 719 F.2d 985 (9th Cir. 1983), revg. and remanding an unreported District Court decision; contra *Stein v. United States*, an unreported case (D. N.J. 1983, 84-1 USTC par. 9101). We likewise assume, without deciding, that the District Court orders under rule 6(e) do not preclude us from examining respondent's use of the grand jury materials. But see *Estate of Temple v. Commissioner*, 65 T.C. 776, 782-783 (1976).

Petitioners argue that respondent's improper use of the grand jury materials to determine deficiencies and additions against them renders the statutory notices of deficiency null and void, requiring that we invalidate these notices and enter decision for petitioners. We do not agree.

It is well established that ordinarily this Court will not look behind a statutory notice of deficiency to examine the evidence used or the propriety of respondent's motives or conduct in determining the deficiency. *Scar v. Commissioner*, 81 T.C. 855 (1983); *Riland v. Commissioner*, 79 T.C. 185, 201 (1982); *Llorente v. Commissioner*, 74 T.C. 260, 264 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981); *Jackson v. Commissioner*, 73 T.C. 394, 400 (1979); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). We have recognized two possible exceptions to the general rule: (1) Where there is substantial evidence of unconstitutional conduct by respondent in determining the deficiency (*Riland v. Commissioner*, 79 T.C. at 207; *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. at 328; *Suarez v. Commissioner*, 58 T.C. 792, 814 (1972), overruled in part, *Guzzetta v. Commissioner*, 78 T.C. 173, 184 (1982)), and (2) in the so-called "naked assessment" cases "involving unreported income where the

---

[6]Respondent's argument to this point is not entirely clear. He has phrased the basis for nonreviewability on (1) comity, (2) res judicata (District Court orders are not reviewable collaterally in these proceedings), and (3) apparently a variation of a "good faith" exception to the exclusionary rule.

respondent introduced no substantive evidence but rested on the presumption of correctness and the petitioner challenged the notice of deficiency on the grounds that it was arbitrary." *Jackson v. Commissioner*, 73 T.C. at 401. See *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66 (1973), appeal dismissed (6th Cir., Apr. 1, 1975), cert. denied 423 U.S. 860 (1975). However, in neither limited circumstance did we hold the statutory notice to be null and void, the remedy that petitioners here seek. See *Riland v. Commissioner*, 79 T.C. at 207; *Jackson v. Commissioner*, 73 T.C. at 401; *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. at 328; *Human Engineering Institute v. Commissioner*, 61 T.C. at 66; *Suarez v. Commissioner*, 58 T.C. at 814.

Wholly apart from the question of the remedy to be afforded, petitioners may not invoke the so-called "naked assessment" rule in this case. See *United States v. Janis*, 428 U.S. 433, 441–443 (1976). See and compare *Llorente v. Commissioner*, 649 F.2d 152 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980); *De Cavalcante v. Commissioner*, 620 F.2d 23 (3d Cir. 1980), affg. a Memorandum Opinion of this Court; *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977); *Carson v. United States*, 560 F.2d 693 (5th Cir. 1977); *Gerardo v. Commissioner*, 552 F.2d 549 (3d Cir. 1977), affg. in part and revg. in part a Memorandum Opinion of this Court; *Jackson v. Commissioner, supra.* Even assuming the "naked assessment" rule applies,[7] the parties' stipulation that the deficiencies and additions may be entered pursuant to respondent's statutory notice "without the necessity for the introduction of any evidence by * * * respondent" satisfies whatever "minimal predicate evidence" he would be required to adduce under this rule. See *De Cavalcante v. Commissioner*, 620 F.2d at 27–28; *Gerardo v. Commissioner*, 552 F.2d at

---

[7]The deficiencies in this case largely result from disallowed deductions to the corporation resulting in constructive dividends to the shareholder. Although the stipulated documents hint at alleged bribery and extortion by petitioners, the record does not indicate the exact source or nature of the disallowed payments by Meridian resulting in constructive dividends to the Grahams. It is not clear that such payments would in any event be within the "naked assessment" rule, since cases applying that "rule" have uniformly involved unreported income from illegal sources, such as gambling or narcotics. See cases cited in text above. We express no opinion regarding the parameters of the "naked assessment" rule as applied by the various circuit courts. See *Jackson v. Commissioner*, 73 T.C. 394, 404–405 (1979). See also *Karme v. Commissioner*, 673 F.2d 1062 (9th Cir. 1982), affg. 73 T.C. 1163 (1980).

552–555; *Karme v. Commissioner*, 673 F.2d 1062, 1065 (9th Cir. 1982), affg. 73 T.C. 1163 (1980).

In presenting their argument, petitioners apparently fail to recognize that the existence of a legal wrong (improper use of grand jury materials) is a completely separate question from the remedy to be afforded upon proof of that legal wrong. On brief, petitioners seem to argue that invalidation of the statutory notices automatically follows from a finding of improper use by respondent of the grand jury materials. Thus, at times, petitioners seem to argue that their stipulation, quoted above, conditionally conceding the deficiencies and additions, becomes effective only upon our finding that respondent's use of the grand jury materials in this case was legal and proper. However, on brief prepared by counsel, petitioners demonstrate an understanding of the legal principles discussed above. Petitioners never adequately addressed respondent's argument on brief, which we have accepted, that invalidation of the statutory notice of deficiency is not the appropriate remedy even if we find improper use of grand jury materials. Moreover, at no time have petitioners sought to be relieved of their stipulation.

Thus, even assuming the illegality of respondent's use of the grand jury materials in this case, such use does not render the statutory notices null and void, requiring invalidation of the statutory notices.[8] Since petitioners have conceded the deficiencies and fraud additions absent invalidation of the statutory notices, we leave to another day the determination of the appropriate remedy in this Court where respondent has improperly used grand jury materials in preparing a statutory notice of deficiency.[9] We simply hold that invalidation of the

---

[8] Petitioners' reliance upon *Cohen v. Commissioner*, a Memorandum Sur Order of this Court unofficially reported at 42 T.C.M. 312, 50 P–H Memo T.C. par. 81,901 (1981), is misplaced. In *Cohen*, the Government did not secure rule 6(e) orders before the IRS obtained access to grand jury materials. Moreover, in *Cohen*, we denied the taxpayers' motions to dismiss and for summary judgment. We also denied their motion to shift the burden of proof to the respondent. In view of the narrow issue presented for our decision in this case, particularly in light of the parties' stipulation, we have no occasion to consider the remedy afforded the taxpayers in *Cohen*.

[9] In particular, we decline to express any opinion in regard to the application of the so-called "exclusionary rule" in Tax Court proceedings. See *Black Forge, Inc. v. Commissioner*, 78 T.C. 1004 (1982); *Guzzetta v. Commissioner*, 78 T.C. 173, 175 n. 2 (1982); *Tirado v. Commissioner*, 74 T.C. 14, 29 (1980), affd. on other grounds 689 F.2d 307 (2d Cir. 1982); *Proesel v. Commissioner*, 73 T.C. 600, 610 (1979). See also *United States v. Janis*, 428 U.S. 433, 456 (1976).

statutory notice is not that remedy.[10]

Since we hold that the statutory notices are not invalid,

*Decisions will be entered for the respondent.*

Reviewed by the Court.

---

WILBUR, *J.*, concurring: Referring to the civil use of grand jury materials giving rise to these proceedings, the majority states:

The information upon which Respondent determined the deficiencies and fraud additions was based on or gleaned from documents, testimony, and other information secured by agents of the Internal Revenue Service from these grand jury proceedings.

The majority then assumes for purposes of this case that these grand jury materials were improperly acquired by the Service pursuant to a rule 6(e) order issued under criteria disapproved in two Supreme Court decisions that are fully applicable. The majority also assumes that the rule 6(e) orders issued by the District Court do not preclude us from examining respondent's use of the grand jury materials and the appropriate consequences.

I have several reservations about the majority's approach. The grand jury is peculiarly a creature of the District Court that created it, and both by history and Federal rule, it is closely supervised by that court. The Federal Rules of Criminal Procedure, pursuant to rule 6(e), specifically allocate responsibility for determining the propriety of using grand jury material for civil purposes to the District Court. Where the District Court supervising a particular grand jury has

---

[10]Because of the apparent widespread IRS access to grand jury materials for its civil tax audits prior to *Sells Engineering* and *Baggot*, it might be useful to expound upon the ramification of these decisions in this Court, specifically the questions of reviewability, retroactivity, and remedy. Since our views on these questions would not affect the result in this case, we decline to address them. This judicial restraint, by no means unique to this Court, is based upon certain overlapping doctrines of judicial administration (including ripeness, mootness, and advisory opinions), doctrines reflecting "a sound principle of judicial administration that courts will not gratuitously decide complex issues that cannot affect the disposition of the case before them." *LTV Corp. v. Commissioner*, 64 T.C. 589, 595 (1975). See also *Roderick v. Commissioner*, 57 T.C. 108, 112–113 (1971).

issued an order permitting the civil use of grand jury materials, that should end the matter for the Tax Court. Our jurisdiction is carefully circumscribed by statute and includes only civil matters; we certainly have no experience with, or responsibility for, grand juries. It is therefore wholly inappropriate for the Tax Court to reexamine the propriety of a District Court order under rule 6(e), even if that order appears to be inappropriate to us. Since there was a rule 6(e) order issued in the instant case, that ends the matter for me.

This seems to be the only course of action that recognizes the diverse responsibilities of the Tax Court and U.S. District Courts, particularly the U.S. District Court that has responsibility for a specific grand jury. For these reasons and also to avoid duplicative proceedings, it is imperative that the Tax Court honor a rule 6(e) order issued by a District Court having specific responsibility for a specific grand jury, even though we may have misgivings about the wisdom of that order.

Even more to the point, no purpose would be served by denying the Government use of grand jury materials—either in preparing the statutory notice or at trial—where a rule 6(e) order has been issued. Whether evidence is suppressed before or at trial, the exclusionary rule is principally designed to deter improper behavior by investigative personnel. No after-the-fact sanction in a potential later lawsuit will deter use of grand jury material that has been specifically provided, after careful deliberation, by order of a U.S. District Court judge specifically charged with that responsibility. Access has been obtained in good faith by the only procedure available—the one established by Congress. It is impossible to ask any more of the Government official, and second guessing the District Court judge on Monday morning can never change the outcome on the previous Saturday.

And the same rationale applies if the rule 6(e) order would not have been issued under the standard subsequently articulated by the Supreme Court in *United States v. Sells Engineering, Inc.*, 463 U.S. ____ (1983), and *United States v. Baggot*, 463 U.S. ____ (1983). While these cases undoubtedly provide the criteria for Courts—either District Courts or Appellate Courts—that have rule 6(e) orders under consideration as a live issue, nothing in these opinions suggests that material obtained in good faith pursuant to earlier rule 6(e) orders

issued in due course should now be suppressed. To do so could not affect investigative behavior in any way, and is directly contrary to the criteria the Supreme Court has articulated for invoking the exclusionary rule in civil proceedings. See *Janis v. United States*, 428 U.S. 433 (1976), specifying the criteria applicable in deciding whether the exclusionary rule should be applied in a civil case. As the Second Circuit recently stated in deciding that illegally seized evidence should not be excluded in the Tax Court proceeding under review:

> The Supreme Court has made it plain that the principal, if not the only, justification for excluding illegally seized evidence from governmental proceedings is to deter future governmental misconduct. *United States v. Janis, supra,* 428 U.S. at 446; see *Stone v. Powell,* 428 U.S. 465, 486 (1976); *United States v. Calandra,* 414 U.S. 338, 347–48 (1974). The exclusionary rule is "calculated to prevent, not to repair"; its purpose is "to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217 (1960). Current doctrine does not, however, take this principle to its furthest implication, which would require the exclusion of evidence whenever even a remote prospect of deterrence exists. * * * [*Tirado v. Commissioner,* 689 F.2d 307, 309, 310 (2d Cir. 1982); fn. ref. omitted.]

The majority assumes for purposes of this case that the Government's case was constructed essentially from improperly acquired grand jury materials in violation of two directly applicable Supreme Court decisions. But the majority leaves the import of these circumstances to another day, since petitioner's counsel has technically selected the wrong remedy—asking for invalidation of the statutory notice, rather than shifting the burden of going forward with untainted evidence and precluding the respondent from introducing at trial the evidence improperly acquired.

Given the importance of grand jury secrecy that the Supreme Court has emphasized over and over, and the abuse represented by the utilization of grand jury material for civil purposes, this disposition solely on the basis of form (something analogous to election of remedy) is questionable. In any routine suppression case, two questions are presented: (1) Was the information improperly acquired—(Is it tainted?), and (2) if so, what is the appropriate remedy. *Both* of these issues are present in this case and were addressed by the parties. The first issue is the principal issue—there must be a wrong in order to merit a remedy. I would address the first question and

hold that the evidence "taint" tainted. The only result of ducking the principal issue, a pressing issue involved in many other cases currently before the Court, will be to delay the proceedings on many of our calendars until the matter is inevitably decided at a later date. Additionally, avoiding the principal issue will only add to the pile of motions raising this issue, most of them involving material procured pursuant to a rule 6(e) order. I would simply say our inquiry ends when we encounter a timely rule 6(e) order that has not been procured by fraud sufficient to justify collateral attack.[1]

WHITAKER, *J.*, agrees with this concurring opinion.

---

NIMS, *J.*, concurring: I agree with the result in this case, but I think it is of the utmost importance to stress that even if there is use of illegal evidence in constructing a deficiency notice, such use will not invalidate the notice. This is what the majority holds, and none of the other concurring opinions disagree.

By attacking the validity of the deficiency notice the petitioners are, in effect, attacking this Court's jurisdiction. But the Court's jurisdiction is both prescribed and circumscribed by the provisions of the Internal Revenue Code, and historically we have not gone beyond these provisions to ascertain the limits of our jurisdiction. See, for example, *Riland v. Commissioner*, 79 T.C. 185, 199 (1982), where petitioners sought the invalidation of a deficiency notice on the ground that it was the product of agency action unreasonably delayed in violation of the mandate of 5 U.S.C. section 555(b) (1976).

Petitioners attack the deficiency notice on the ground that it was based on tainted evidence (the evidence obtained under the challenged rule 6(e) order). It would be surprising, indeed, if this or any other court, whether of limited or more general jurisdiction, were to deny its own jurisdiction solely on evidentiary grounds. But since petitioners have put the case in

---

[1]Where no rule 6(e) order has been issued or one has been procured by fraud or deception, exclusion of the materials at a civil trial may be an effective and appropriate remedy. See *Cohen v. Commissioner*, a Memorandum Sur Order of this Court, 42 T.C.M. 312, 50 P–H Memo T.C. par. 81,901 (1981); Goldfein & Pisem, "Tax Court Expands Exclusionary Rule to IRS Violations of Grand Jury Secrecy," 55 J. Tax. 312 (November 1981).

this posture, jurisdiction is basically the sole issue which the Court has addressed in declining this case. I feel that the extended discussion of rule 6(e) orders by the majority and other concurring opinions, without deciding any rule 6(e) questions, may serve to send mixed signals to other litigants as to how we may be expected to deal in the future with rule 6(e) orders.

The foregoing is not to say that petitioners here were without appropriate remedies in this Court had they chosen to use them. In *Scar v. Commissioner*, 81 T.C. 855 (1983), petitioners attacked a facially unmeritorius deficiency notice on the jurisdictional ground that the Commissioner had failed to determine a deficiency as required under section 6212(a). We found jurisdiction, but pointed out a remedy which the taxpayer there might have pursued as an alternative to seeking invalidation of the deficiency notice. See also *Estate of DiRezza v. Commissioner*, 78 T.C. 19 (1982). In the case before us, a motion to suppress the rule 6(e) evidence under the Fourth Amendment exclusionary rule would squarely have presented the rule 6(e) question for appropriate deliberation by this Court. However, for reasons best known to themselves, petitioners persisted in their single-minded attack on the deficiency notice. A direct answer by the majority to the jurisdictional question thus raised, and nothing more, might have been a more clear-cut response.

DAWSON, GOFFE, WILES, KÖRNER, SHIELDS, HAMBLEN, and CLAPP, *JJ.*, agree with this concurring opinion.

---

WHITAKER, *J.*, concurring: As is frequently true with a difficult case, opinions tend to proliferate. While generally that may be unfortunate, I feel it better serves our judicial responsibility to set forth our views on important and continuing issues as those created by *Baggot*[1] and *Sells*.[2] As Judge Wilbur points out, unless and until a majority of this Court is willing to react to *Baggot* and *Sells* either generally or in the several situations in which the issue will arise, each of us

---

[1] *United States v. Baggot*, 463 U.S. ____ (1983).
[2] *United States v. Sells Engineering, Inc.*, 463 U.S. ____ (1983).

individually will suffer the added burden of multiple motions without the guidance of the unified voice of this Court.

In my judgment, there is nothing in the particular facts before us which would warrant our treating the grand jury material obtained by respondent under the court orders described in the majority opinion as tainted, whether used by respondent in connection with this statutory notice or in preparation for trial of this case or in the trial itself. And I would be of the same opinion even if these petitioners presented us with a subsequent order of that U.S. District Court which recognized, on the basis of *Baggot* and *Sells*, that its earlier orders were improperly issued.

Moreover, I think it important that we emphasize, as Judge Wilbur does, that we are not required to decide, now or at any other time, whether *Baggot* and *Sells* should be applied retroactively or prospectively, as to rule 6(e) orders. That is not our province. On the other hand, we do have both the jurisdiction and the responsibility in a case before us to examine the circumstances of a statutory notice and to admit or exclude evidence. Thus, in a proper case, we should be willing to look at all the facts surrounding respondent's use of grand jury materials, including the presence of a rule 6(e) order, its language, and the adherence by the parties to its strictures.[3]

In addition, the majority goes too far in seeming to hold that a statutory notice has such sanctity that we would never go behind it as a result of *any* misuse or abuse of the grand jury process. See Judge Nims' concurring opinion. I am not prepared to accept such a blanket rule. While I agree with the result reached by the majority, both the public and this Court would be better served, I suggest, if the Court had simply held that under the stipulated facts, respondent's use of the grand jury materials in preparing the statutory notice was fully warranted. Not only would there be an obvious implication in such a holding with respect to further proceedings in the case at bar, but the opinion would stand as a useful analogy in similar cases.

SWIFT, *J.*, agrees with this concurring opinion.

---

[3] See note 1 in Judge Wilbur's concurring opinion.

COHEN, *J.*, concurring: I agree with the judicial restraint used by the majority and with the result reached in this case. Regardless of our conclusions on the merits of those several important issues not decided at this time,[1] I do not believe that we should foreclose the possibility that there may be circumstances brought to our attention in some case that would require us to exercise our independent judgment by, among other things, controlling the evidence, in order to maintain the integrity of proceedings before us. See, e.g., *Suarez v. Commissioner*, 58 T.C. 792 (majority opinion) and 816 (concurring opinion of Judge Tannenwald) (1972). See also *United States v. Janis*, 428 U.S. 433, 458 n. 35 (1976).

I am not suggesting that, in every case, or in many cases, or in any particular type of case, we should review the propriety of an extant order issued by a District Court. I would seldom, if ever, consider that possibility. In the context of allegations of improper access to grand jury materials, however, the issue will seldom be ripe for consideration prior to that time that evidence is tendered in a civil proceeding. At that time, the particular grand jury probably will have been discharged, and the District Court that made the order will be heavily engaged in its then-existing criminal and civil case load and will not welcome the additional chore of deciding evidentiary questions for us. Requiring the parties to seek relief in the District Court will in any event delay our proceedings, even if that Court were inclined to review an order made many years before and no longer involved in any matter there pending. Many relevant factors must be considered before this Court adopts a policy for all cases in which respondent has received grand jury materials pursuant to an order made under rule 6(e), Federal Rules of Criminal Procedure.

At the time a case is presented to us in which the parties seek a remedy other than invalidation of the notice of deficiency, such as suppression of the evidence or shifting the burden of going forward, we must determine the appropriate

---

[1]For example, Judge Wilbur seems to be applying a good-faith exception to the exclusionary rule, an idea frequently proposed and debated but not yet mandated by the Supreme Court or by Congress. While much could be said for the merits of such a rule, it does not seem to be part of the law in its current state.

response. We cannot and should not do so on the record in the case now before us.

STERRETT, WILES, and CHABOT, *JJ.*, agree with this concurring opinion.