# United States Tax Court

T.C. Memo. 2026-30

DANIEL ISAIAH THODY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 27415-21.                              Filed March 30, 2026.

————————

Daniel Isaiah Thody, pro se.

*Michael V. Cowan* and *Allissa L. VanderKooi*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, *Judge*: Petitioner, Daniel Thody, sold airplane parts to the U.S. Government (Government) in 2006–10 (years in issue) and failed to disclose his income to the Internal Revenue Service (IRS). After the Government secured a criminal conviction against Mr. Thody for tax evasion, the Commissioner of Internal Revenue (Commissioner) conducted a civil examination and determined that Mr. Thody had an income tax deficiency for each of the years in issue and was liable for additions to tax under section 6651(a)(1) and (f)[1] for fraudulent failure to file income tax returns.

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

**[\*2]**                              FINDINGS OF FACT

The parties' First and Second Stipulations of Facts are incorporated by this reference. Mr. Thody resided in a federal prison facility in Michigan when he timely filed his Petition.[2]

I.    *Income Concealment and Criminal Judicial Proceedings*

During the years in issue Mr. Thody negotiated contracts with the U.S. Department of Defense and with third parties to make airplane parts for the Government. He negotiated on behalf of two businesses: WET Publishing (WET) and Middle Creek Construction (MCC). WET is a sole proprietorship originally started by Mr. Thody's father, Walter E. Thody, who was incarcerated throughout the years in issue. During these years Mr. Thody oversaw all operations of WET, which had no employees. (Mr. Thody performed some of the manufacturing work himself but subcontracted portions of the work.) Mr. Thody was the beneficiary of all WET's income but failed to file tax returns reporting that income and paid no income tax on it. MCC was owned with a third party with whom Mr. Thody split profits from the Government contracts. Again, Mr. Thody did not report or pay tax on his share of MCC's income.

The Government discovered Mr. Thody's concealment of income and the U.S. Department of Justice secured an indictment on five counts of tax evasion under section 7201 for the years in issue.[3] Collectively, the five counts of the indictment charged, among other things, that

---

[2] The Notice of Deficiency on which this case is based is dated May 4, 2021, and specifies the last day to file a petition with the Tax Court as August 2, 2021. *See* I.R.C. § 6213(a). The Petition arrived by mail at the Tax Court on August 6, 2021, in an envelope bearing U.S. postage but no U.S. Postal Service postmark. The envelope also bears the following note in Mr. Thody's handwriting: "This envelope was turned in as LEGAL MAIL @ FCI MILAN [a federal prison facility in Milan, Michigan] on Friday, July 30, 2021 . . . ."

When a postmark is missing, our caselaw instructs us to deem the postmark illegible and permit the introduction of extrinsic evidence to ascertain the mailing date. *See Sylvan v. Commissioner*, 65 T.C. 548, 553–55 (1975); *see also Mason v. Commissioner*, 68 T.C. 354, 356 (1977). Here, we find by a preponderance of the evidence that the Petition was presented to the U.S. Postal Service on or before August 2, 2021, and we therefore treat it as timely filed. *Cf.* I.R.C. § 7502(a)(1) (providing that if a document is mailed to the Tax Court by U.S. mail, then the date of the U.S. postmark "shall be deemed to be the date of delivery [of the document]").

[3] Section 7201 makes it a criminal offense to "willfully attempt[] in any manner to evade or defeat any tax imposed by this title [i.e., the Code] or the payment thereof."

**[*3]** Mr. Thody "fail[ed] to make an income tax return" for any of the years in issue. A jury trial was held in 2013 in the U.S. District Court for the Western District of Texas (Texas District Court), and the jury found Mr. Thody guilty on all counts. In October 2016, following a remand from the U.S. Court of Appeals for the Fifth Circuit, the Texas District Court sentenced Mr. Thody to a 90-month prison term, a $500 special assessment, and a three-year period of supervised release. Among the conditions of the supervised release was a restitution payment totaling $162,037, an amount equal to "the tax loss in this case," according to the Texas District Court.

After the Fifth Circuit affirmed the Texas District Court's judgment, the U.S. Department of Justice filed an action in the U.S. District Court for the Western District of Michigan (Michigan District Court) on May 1, 2019, to (among other things) reduce Mr. Thody's unpaid restitution liability to judgment.[4] On April 12, 2022, the Michigan District Court ruled that the Government's assessment of Mr. Thody's restitution liability was valid and enforceable and entered judgment against Mr. Thody in the amount of $180,888.82 (equal to the $162,037 restitution liability plus a previously existing assessment of $18,851.82 for Mr. Thody's 2006 tax year).

II. *Civil Examination and Notice of Deficiency*

In a parallel civil proceeding, in or around August 2017, the IRS opened an examination of Mr. Thody's income tax liabilities for the years in issue. Revenue Agent David Greiner (RA Greiner) conducted a bank deposits analysis using (1) statements from two bank accounts held in Mr. Thody's name, (2) statements from a bank account held in the name of one of Mr. Thody's daughters[5] (together, Thody bank accounts), (3) payment schedules from the Defense Finance Accounting Service (DFAS) showing amounts paid by the Department of Defense to the Thody bank accounts, and (4) statements from the bank accounts of

---

[4] According to Internal Revenue Manual (IRM) 34.6.2.1(1) (June 12, 2012), "[t]he principal purpose for instituting a suit to reduce tax claims to judgment is to extend the statute of limitations for collection." *Compare* I.R.C. § 6502(a)(1) (providing a ten-year period of limitations for collecting a tax liability after assessment), *with* 28 U.S.C. § 3201(a), (c) (providing that when the Government obtains a judgment in a civil action, it then holds a lien on all real property of the judgment debtor, lasting for an initial period of 20 years and renewable for an additional 20 years with court approval).

[5] During the years in issue, Mr. Thody was the only person making or directing deposits into the account held in his daughter's name.

[*4] seven vendors that provided services and supplies to WET and/or
MCC (vendor bank accounts). RA Greiner summed the Thody bank
account deposits during the years in issue that corresponded to
payments shown on the DFAS schedules, then subtracted payments
that Mr. Thody made to the vendor bank accounts.

RA Greiner received all the bank account statements from the
IRS Criminal Investigation Division (CID), which had gathered them as
it conducted the earlier criminal investigation of Mr. Thody. The
account statements had likewise been (1) presented to the grand jury
that indicted Mr. Thody and (2) used by the U.S. Department of Justice
as exhibits at Mr. Thody's trial in the Texas District Court. *See*
Government's Exhibits, *United States v. Thody*, No. 13-CR-153 (W.D.
Tex. Nov. 8, 2013), ECF No. 97.

On April 26, 2021, RA Greiner made a substitute for return (SFR)
for each of the years in issue. On May 4, 2021, on the basis of RA
Greiner's calculations as reflected in the SFRs, the IRS issued a Notice
of Deficiency to Mr. Thody, with the following determinations:

| Year | Deficiency | Additions to Tax | | |
|---|---|---|---|---|
| | | *§ 6651(f)* | *§ 6651(a)(2)* | *§ 6654* |
| 2006 | $13,653 | $13,482 | $4,309 | $646 |
| 2007 | 37,747 | 27,367 | 9,437 | 1,053 |
| 2008 | 36,732 | 26,631 | 9,183 | 1,180 |
| 2009 | 51,807 | 37,560 | 12,952 | 1,240 |
| 2010 | 26,017 | 18,862 | 6,504 | 558 |

III. *Tax Court Pretrial Developments*

As previously indicated, Mr. Thody timely petitioned this Court
to redetermine the IRS's deficiencies and additions to tax noted above.
Before trial, the Commissioner conceded the additions to tax under
sections 6651(a)(2) and 6654. He also conceded the income tax
deficiencies in the Notice of Deficiency to the extent they exceeded the
restitution liabilities approved by the Michigan District Court, and he
adjusted his determinations of the section 6651(f) additions to tax.
Therefore, the amounts now at issue are as follows:

[*5]

| Year | Deficiency | Addition to Tax § 6651(f) |
|------|------------|---------------------------|
| 2006 | $13,653 | $10,240 |
| 2007 | 36,687 | 27,367 |
| 2008 | 35,173 | 26,380 |
| 2009 | 51,694 | 37,560[6] |
| 2010 | 22,772 | 17,079 |

In addition, before trial we granted the Commissioner's Motion for Partial Summary Judgment. We ruled that because of Mr. Thody's conviction under section 7201 for each year in issue, for purposes of the section 6651(f) additions to tax he is collaterally estopped from denying that his failure to file tax returns for the years in issue was fraudulent.

## OPINION

### I.  *Burdens of Production and Proof*

Generally, the determinations in a Notice of Deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.[7]  *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).  However, in unreported income cases and with regard to certain additions to tax, the Commissioner bears the burden of production.

### A.  *Unreported Income*

In unreported income cases the Commissioner has the burden of establishing a "minimal evidentiary showing" connecting the taxpayer with the alleged income-producing activity or demonstrating that the taxpayer actually received unreported income.  *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019) (quoting *Blohm v. Commissioner*, 994 F.2d 1542, 1549 (11th Cir. 1993), *aff'g* T.C. Memo. 1991-636).  Once the Commissioner makes the required threshold showing, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence

---

[6] The Notice of Deficiency lists the section 6651(f) addition for tax year 2009 as $37,560.07, whereas the Commissioner's Pretrial Memorandum and Seriatim Opening Brief list the figure as $37,560.67.  We assume the discrepancy is a typographical error and that the Commissioner did not intend to increase the amount of his determination.

[7] Mr. Thody does not contend, nor does the evidence show, that the burden of proof has shifted to the Commissioner under section 7491(a) with respect to any factual issue.

[*6] that the Commissioner's determinations are arbitrary or erroneous. *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Walquist*, 152 T.C. at 67–68. As set forth in the remainder of this Opinion, the Commissioner has met the burden of production here on the unreported income.

B. *Additions to Tax*

The Commissioner likewise bears the burden of production with respect to an individual taxpayer's liability for additions to tax. I.R.C. § 7491(c). With respect to the fraud element of the addition to tax under section 6651(f), the Commissioner has the burden of proving fraud by clear and convincing evidence. I.R.C. § 7454(a); Rule 142(b); *Clayton v. Commissioner*, 102 T.C. 632, 652–53 (1994).

II. *Validity of the Notice of Deficiency*

Mr. Thody advances several arguments to attack the procedural validity of the Notice of Deficiency. These arguments do not succeed.

A. *SFRs*

As previously discussed, because Mr. Thody did not file returns for the years in issue, the IRS prepared SFRs for him under section 6020(b), which provides that, if any person fails to make any return required by law, "the Secretary shall make such return from his own knowledge and from such information as he can obtain." *See also Rodriguez v. Commissioner*, T.C. Memo. 2009-22, 97 T.C.M. (CCH) 1090, 1092 ("[T]he IRS has full authority to prepare an SFR for anyone who fails to file his own return."). Mr. Thody complains that the Notice of Deficiency did not include copies of Form 13496, IRC Section 6020(b) Certification, and that the copies produced by the Commissioner before trial were not authentically signed by RA Greiner. However, while Form 13496 or its equivalent may be a necessary component of an SFR, *see* Treas. Reg. § 301.6020-1(b)(2), it is not a necessary component of a Notice of Deficiency. A Notice of Deficiency generally is valid so long as it fairly advises the taxpayer that the IRS has determined a deficiency and specifies the relevant years and amounts. *Dees v. Commissioner*, 148 T.C. 1, 4 (2017). The Notice of Deficiency issued to Mr. Thody clearly satisfies these requirements. Moreover, when a taxpayer fails to file a return, issuance of an SFR is not a prerequisite to the IRS's issuing a valid Notice of Deficiency. *Roat v. Commissioner*, 847 F.2d 1379,

[*7] 1381–82 (9th Cir. 1988); *Hartman v. Commissioner*, 65 T.C. 542, 545–46 (1975).[8]

### B.    *Prenotice Payments*

Mr. Thody alleges that before the Notice of Deficiency was issued he made payments to the IRS (related to the restitution liability ordered by the Texas District Court as a condition of his supervised release) exceeding the total deficiency determined by the IRS for the years in issue.[9]    According to Mr. Thody, his restitution payments render the Notice of Deficiency invalid.

Section 6211(a) generally defines a deficiency for a particular tax year as the excess of the correct amount of the tax over the sum of (1) "the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon,"[10] and (2) "the amounts previously assessed (or collected without assessment) as a deficiency."    Although the IRS may have previously collected without assessment or even summarily assessed the restitution liability, it neither assessed nor collected such restitution *as a deficiency*.  *See* I.R.C. § 6213(b)(5) (providing that normal deficiency procedures do not apply to criminal restitution assessments);

---

[8] We also reject Mr. Thody's arguments that the Notice of Deficiency is invalid because (1) there is no "prescribing regulation" for section 6020 and (2) RA Greiner was not properly authorized to sign the Forms 13496.  To the extent Mr. Thody means to challenge the authority of the person who signed the Notice of Deficiency, we note that the signature line on the Notice of Deficiency reads: "Brian J. Atkinson, Technical Service Territory Manager, Midstates."  IRS Delegation Order 4-8 (Rev. 2), which is signed by an IRS Deputy Commissioner, delegates the authority to sign and send Notices of Deficiency to (among others) "Territory Managers."  IRM 1.2.2.5.8 (Dec. 7, 2020).  Meanwhile, Delegation Order 1-23 authorizes the Deputy Commissioner to "perform any function the Commissioner is authorized to perform." IRM 1.2.2.2.20 (Nov. 8, 2000).  And Treasury Department Order No. 150-10 (Apr. 22, 1982), issued by the Secretary of the Treasury, delegates to the Commissioner "the administration and enforcement of the Internal Revenue laws."  *See* I.R.C. § 6212(a) ("If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B . . . he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."); I.R.C. § 7701(a)(11)(B) ("The term 'Secretary' means the Secretary of the Treasury or his delegate.").

[9] We note that Mr. Thody's evidence of payment is limited to a series of documents purporting to be "dollars" and stating, in relevant part: "That THIS [document] must be accepted as DOLLARS is self-evident in light of the facts that NO legal definition of DOLLAR currently exists . . . ."

[10] The amount of tax shown on an SFR does not count for these purposes. *Spurlock v. Commissioner*, 118 T.C. 155, 158–61 (2002).

**[\*8]** *Muncy v. Commissioner*, T.C. Memo. 2017-83, at \*18–19, *supplementing* T.C. Memo. 2014-251, *aff'd*, 890 F.3d 724 (8th Cir. 2018); *Rozin v. Commissioner*, T.C. Memo. 2017-52, at \*10–11. This does not necessarily mean that the IRS is not required to later credit its deficiency assessments for the years in issue with amounts (if any) collected on the restitution. *See United States v. Tucker*, 217 F.3d 960, 962 (8th Cir. 2000); *United States v. Helmsley*, 941 F.2d 71, 102 (2d Cir. 1991). Mr. Thody's payments on the restitution liability, if any, do not affect the existence of deficiencies for the years in issue; but rather such payments will apply after assessment to satisfy that deficiency or a portion thereof.

### C. *Bank Account Statements*

RA Greiner conducted the bank deposits analysis using bank account statements he received from IRS's CID, which had collected the statements in the course of its criminal investigation. Mr. Thody contends that because these account statements were presented to the grand jury that indicted him, RA Greiner's use of the statements was improper. Mr. Thody cites IRM 25.1.5.5(1) (June 7, 2016), which states that Rule 6(e) of the Federal Rules of Criminal Procedure (Fed. R. Crim. P.) "precludes the use of 'matters occurring before the Grand Jury' in any subsequent civil action."

However, the bank account statements used by RA Greiner were also presented as jury exhibits during Mr. Thody's trial in the Texas District Court. It is well established that once grand jury material has been admitted as evidence in a criminal trial, it becomes part of the public record and thus is not subject to Fed. R. Crim. P. 6(e). *See Sisk v. Commissioner*, 791 F.2d 58, 60 (6th Cir. 1986); *Gavosto v. Commissioner*, T.C. Memo. 1994-481, 68 T.C.M. (CCH) 827, 829. Moreover, the bank account statements were collected by the CID during its investigation of Mr. Thody and thus were in the IRS's possession before the grand jury investigation. The Sixth Circuit considered an identical set of facts in *Sisk v. Commissioner*, 791 F.2d at 60, and concluded that "the basis for determining taxpayer's income tax liability for the years in issue was generated internally and was not derived from grand jury material." Finally, as we held in *Graham v. Commissioner*, 82 T.C. 299, 310 (1984), *aff'd*, 770 F.2d 381 (3d Cir. 1985): "[E]ven assuming the illegality of [the Commissioner's] use of the grand jury materials in this case, such use does not render the statutory notices null and void, requiring invalidation of the statutory notices."

**[\*9]**    Therefore, we hold that the Notice of Deficiency in this case is valid, and we proceed to redetermine the Commissioner's determinations.

III.    *Income Tax Deficiencies*

If a taxpayer fails to maintain adequate records of income as required under section 6001, the Commissioner may reconstruct his income by any reasonable method that clearly reflects income. *See* I.R.C. § 446(b); *Holland v. United States*, 348 U.S. 121, 130–32 (1954); *Harper v. Commissioner*, 54 T.C. 1121, 1129 (1970). One indirect method of income reconstruction is a bank deposits analysis. We have long accepted bank deposits analysis as a reasonable reconstruction method. *See, e.g.*, *Nicholas v. Commissioner*, 70 T.C. 1057, 1064–65 (1978); *Harper*, 54 T.C. at 1129. While not conclusive, bank deposits are prima facie evidence of income. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). All money deposited into a taxpayer's account is presumed to be taxable unless the taxpayer can show otherwise. *DiLeo v. Commissioner*, 96 T.C. 858, 868 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992).

RA Greiner included in his bank deposits analysis only those deposits that corresponded to payments to WET or MCC on the DFAS payment schedules, and he subtracted payments made to WET's and MCC's vendors. This methodology is prima facie reliable, and Mr. Thody does not challenge it. Rather, Mr. Thody contends that the net income reflected in the bank deposits analysis is not taxable because it did not result from corporate activity. There is no legal authority for this contention, which is directly contradicted by section 61(a): "[G]ross income means all income *from whatever source derived . . . .*" (Emphasis added.)[11]

Mr. Thody also complains that the Commissioner failed to establish that he (Mr. Thody) is a person subject to federal tax law. In so complaining, Mr. Thody misconstrues the burden of proof in this case. The Commissioner established a "minimal evidentiary foundation" for his deficiency determinations by submitting evidence (namely, the court documents from Mr. Thody's criminal case) tying Mr. Thody to WET's and MCC's income-producing activities. *See Walquist*, 152 T.C.

---

[11] In his Seriatim Answering Brief, Mr. Thody cites several Supreme Court cases in putative support of his claim that only income from corporate activity is taxable. But while these cases generally hold that taxable income *includes* income from corporate activity, none of them holds that taxable income is *limited* to such income.

**[\*10]** at 67–68.  Therefore, the determinations in the Notice of Deficiency are presumed correct, and Mr. Thody has the burden to prove otherwise.  *See id.*  Mr. Thody has presented no evidence or argument that he is not subject to federal taxation on his income under the Code (or as he puts it, the federal tax law).

Therefore, we hold that Mr. Thody has income tax deficiencies for the years in issue in the amounts determined by the Commissioner after his pretrial concessions.

## IV.  *Section 6651(f) Additions to Tax*

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on a return for each month for which there is a failure to timely file a tax return, up to 25% in the aggregate.  In the event that the taxpayer's failure to file is fraudulent, section 6651(f) increases the addition to tax to 15% of the tax required to be shown on the return for each month that the failure continues, up to 75% in the aggregate.  An SFR made by the Commissioner under section 6020(b) is not a return for purposes of section 6651(a)(1) and (f).  I.R.C. § 6651(g)(1).

The Commissioner has satisfied his burden of production for the section 6651(f) additions to tax by submitting into evidence (1) the grand jury indictment charging Mr. Thody with attempting to evade tax for each year in issue (in part by failing to file tax returns), (2) the judgment of the Texas District Court confirming Mr. Thody's convictions under section 7201, and (3) Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for each year in issue, indicating that Mr. Thody never filed returns.  The Commissioner's burden of proof is satisfied by Mr. Thody's conviction under section 7201 for each year in issue, as indicated by our Order granting the Commissioner's Motion for Partial Summary Judgment.  Therefore, we hold Mr. Thody liable for the section 6651(f) additions to tax in the amounts determined by the Commissioner after his pretrial concessions.

## V.  *Section 6673 Penalty*

We are authorized by section 6673(a)(1)(B) to impose a penalty of up to $25,000 on a taxpayer who maintains a "frivolous or groundless" position in a proceeding before our Court.  Mr. Thody has advanced frivolous arguments regarding the definition of "income" for federal tax purposes and his status as a person subject to federal tax law.  Because this is Mr. Thody's first case before our Court, we will not impose a

**[\*11]** penalty at this time.  However, we warn him that we may impose a penalty in the future if he continues to make these or similar arguments.

To reflect the foregoing,

*An appropriate decision will be entered.*